**Katrina MACK, on behalf of herself and on behalf of others similarly situated, Plaintiffs,**

v.

**SUFFOLK COUNTY, Richard Rouse, Jane Doe, and the City of Boston, Defendants.**

No. Civ.A. 98–12511–NG.

United States District Court, D. Massachusetts.

Feb. 16, 2000.

Howard Friedman, Law Offices of Howard Friedman, Boston, MA, for Katrina Mack, plaintiff, Joanne Maniscalco, Christine Daley, Denise Gasparini, Alice Buckley, Movants.

Rose E. King, Suffolk County Sheriff's Department, Legal Services Division, Boston, MA, for Suffolk County, Richard J. Rouse, Jane Doe, defendants.

Michael A. Goldsmith, Asst. Corp. Counsel, City of Boston Law Dept., Boston, MA, Eve Anne Piemonte–Stacey, Boston, MA, for City of Boston, defendant.

## MEMORANDUM AND ORDER

GERTNER, District Judge.

Plaintiff Katrina Mack ("Plaintiff" or "Mack") and four potential intervenors ("Plaintiffs") seek to represent a class of women subjected to strip-searches and visual body cavity inspections during pre-arraignment detention at the Suffolk County jail. The searches were not episodic. They were conducted pursuant to an official policy of the Suffolk County Sheriff's office. They were conducted regardless of the charge; every single female pre-arraignment detainee was required to be strip-searched, whether detained for a misdemeanor or a felony. One Plaintiff was charged with driving while in-toxicated and leaving the scene of an accident, and another, with peddling without a license. There was no requirement that there was individualized suspicion that the women were carrying weapons or contraband.

Plaintiff brings an Equal Protection Clause claim under the Fourteenth Amendment against Defendant City of Boston ("City") and Fourth Amendment claims against both the City and Defendants Suffolk County, Jane Doe, and Richard J. Rouse, the Suffolk County Sheriff ("Suffolk County Defendants").

She also moves for class certification under Federal Rule of Civil Procedure 23(a) and 23(b)(2) and (b)(3), and seeks to represent:

All women[1] who, from December 10, 1995, forward, were or who will in the future be:

a. taken into custody by the Boston Police Department and transferred pursuant to Boston Police Department rules regarding the custody of female prisoners to the Suffolk County Jail to be held pending a first court appearance, or after an arrest on a default warrant; and,

b. subjected to a routine strip-search and visual body cavity search at the Suffolk County Jail pursuant to the policy of conducting a strip-search and visual body cavity search of every person who is admitted to the jail.

Also before this Court is a motion brought by Joanne Maniscalco, Christine Daley, Denise Gasparini, and Alice Buckley to intervene in this action pursuant to Fed.R.Civ.P. 24(b)(2). The motion to intervene is assented to by Plaintiff and essentially mirrors Plaintiff's complaint.

Because I find that the Defendants acted on grounds generally applicable to the class, that Mack, Plaintiffs, and the proposed class all share common questions of law which predominate over individual issues, and that

---

1. Plaintiff has amended her complaint several times since its initial filing. In her first amended complaint, Plaintiff excluded women being held on felony charges from the group she sought to represent and included women held in protective custody. *See, Plaintiff's First Amended Com-plaint* [docket entry # 8]. Subsequently, Plaintiff obtained permission to remove women held in protective custody from her complaint and include women held on felony charges. *See, Plaintiff's Second Motion to Amend the Complaint* [docket entry # 19].

a class action would be the most efficient and just means of resolving this dispute, Plaintiff's Second Motion for Class Certification is **GRANTED.**

The motion to intervene of Plaintiffs Joanne Maniscalco, Christine Daley, Denise Gasparini, and Alice Buckley, is **GRANTED** since (1) they meet the requirements of Fed. R.Civ.P. 23(a)(b), (2) Defendants were on notice of their claims as potential class members since the filing of the complaint, and (3) Plaintiff Katrina Mack has assented to their intervention.

## I. *BACKGROUND*

Women arrested in the City of Boston are, as a matter of City policy,[2] transported to the Suffolk County Jail for detention pending an initial court appearance; regional police station lockups, for the most part, do not have adequate facilities. In contrast, men arrested in Boston are held in police lock-ups until arraignment. Until May 24, 1999, all persons committed to the custody of the Suffolk County Sheriff's Department were subjected to a strip-search and a visual body cavity search at the time they were admitted.[3] Because Suffolk County holds female pre-arraignment detainees for the City, only female detainees had to suffer through the uniform strip-search policy. Male pre arraignment detainees, held in police station lock-ups, were only strip-searched when an officer had reasonable suspicion to believe that the arrestee had contraband or weapons in his possession.

On March 5, 1998, Plaintiff Mack was arrested by a Boston police officer. She was charged with driving under the influence of an intoxicating liquor and leaving the scene of an accident after causing property damage. After being booked in a Boston police station, Plaintiff was transported to the Suffolk County Jail on Nashua Street, where she was subjected to a strip-search and a visual body cavity search by a female officer. She was asked to take off all of her clothing, and to bend over and spread the cheeks of her buttocks in order to allow for a visual inspection of her genital area and anus. She claims that she suffered from extreme emotional distress as a result of this search.

The four intervening Plaintiffs were also arrested in Boston, transported to the Suffolk County Jail, subjected to a strip-search and a visual body cavity search, and allegedly suffered extreme emotional distress as a result. Maniscalco and Gasparini were charged with peddling without a license and larceny under $250 respectively. Daley and Buckley were charged with assault and battery.

### A. *The Allegations*

#### 1. *Fourth Amendment Allegations*

Plaintiff claims that the strip-search and visual body cavity inspection to which she, and women in the class she seeks to represent, were subjected violated her Fourth Amendment right to be free from unreasonable searches and seizures. The First Circuit allows strip-searches to be conducted only if the official conducting the search has reason to believe that the individual searched is concealing weapons or contraband. *Swain v. Spinney,* 117 F.3d 1, 7 (1st Cir.1997) (strip-search must be based upon a reasonable suspicion that individual was concealing contraband or weapons); *Blackburn v. Snow,* 771 F.2d 556, 564–5 (1st Cir.1985) (prison's blanket strip-search policy unconstitutional due to lack of particularized suspicion justifying searches).

#### 2. *Equal Protection Allegations*

Plaintiff also alleges that the City violated her right to Equal Protection under the law by sending only female pre-arraignment detainees to the Suffolk County Jail where they

2. Boston Police Department Rule 318–C, Care and Custody of Female Prisoners: "[f]emale prisoners arrested or detained by members of the Boston Police Department will be processed in the usual manner and transported to the Suffolk County Jail, 200 Nashua Street, Boston, for detainment."

3. Suffolk County Sheriff's Department Policy Number S507: "It is the policy of the Suffolk County Sheriff's Department that strip-searches shall be conducted of all inmates committed to the Custody of the Department and at any other time when there exists reasonable suspicion that contraband may be present."

would be subject to the Suffolk County Defendant's blanket strip-search policy. In its opposition to Plaintiff's Second–Motion for Class Certification, the City concedes that similarly situated women and men are treated differently: "all BPD [Boston Police Department] female prisoners who do not make bail prior to arraignment and when the courts are closed are transported to the Jail [Suffolk County Jail] (and consequently strip-searched), whereas similarly situated men are housed in Area lockups (and consequently, not *necessarily* strip-searched)." [4]

## II. DISCUSSION

### A. Standing and Mootness

 Those who seek to invoke the jurisdiction of the federal courts must satisfy Article III's threshold case or controversy requirement by demonstrating that they have standing to bring the case, namely, a personal stake in the outcome. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Moreover, the plaintiff must demonstrate standing separately for each form of relief sought. *Lyons*, 461 U.S. at 109, 103 S.Ct. 1660.[5] For compensatory at damages, standing is satisfied by demonstrating that the plaintiff has suffered a personal injury which is fairly traceable to defendant's allegedly unlawful conduct and which is likely to be redressed by the requested relief. *County of Riverside v.*

*McLaughlin*, 500 U.S. 44, 50, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). For injunctive relief, plaintiff must also demonstrate that she is in real and immediate danger of sustaining future, direct injury as a result of official conduct ongoing at the time of the suit. *Lyons*, 461 U.S. at 102, 103 S.Ct. 1660.

In addition, Plaintiff must demonstrate that the Article III requirements continue to be met throughout the case, that the "requisite personal interest that must exist at the commencement of the litigation (standing) ... continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 22, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), in turn quoting Monaghan, "Constitutional Adjudication: The Who and When," 82 Yale L.J. 1363, 1384 (1973)) (internal quotation marks omitted). An Article III court may only adjudicate live, ongoing controversies. *Honig v. Doe*, 484 U.S. 305, 317, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988).

Defendant Suffolk County does not challenge Mack or Plaintiffs' standing to seek compensatory damages. It does challenge their standing to seek injunctive relief for two reasons. First, it claims that their fear of being strip-searched again is speculative, depending upon the possibility of another arrest, and pretrial detention. Second, it

---

**4.** *The Defendant City of Boston's Opposition To The Plaintiff's Second Motion For Class Certification* [docket entry # 32], p. 2. The City argues that "the defendants' interlocking policies" did not necessarily result in a class-wide deprivation of Fourth Amendment rights. *Id.* This argument is relevant to City's liability rather than to the question of class certification. The plaintiff's allegations are sufficient at this preliminary stage to justify a class action.

**5.** This aspect of *Lyons*, recently restated by the Supreme Court in *Friends of the Earth v. Laidlaw Environmental Services*, —— U.S. ——, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000), has been the subject of scholarly criticism. *See*, Laura L. Little, "It's About Time: Unraveling Standing and Equitable Ripeness," 41 Buff.L.Rev. 933 (Fall, 1993). Little criticizes the Court for collapsing the analysis of jurisdiction and remedy into a single threshold enterprise. Little suggests that standing issues are satisfied by injury-in-fact to the plaintiff. Whether injunctive relief should

then be given should depend upon the effectiveness and appropriateness of the remedy which may well require discovery and a full scale hearing on the merits. *See also*, 13 CHARLES A. WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3531.2, at 405–6 (2d ed. 1984) ("The opinion [*Lyons*] entrenches the lesson that standing depends on the request for relief. Lyons had standing to seek damages, as no one could deny. The self-same injury and facts did not support standing to seek a prospective remedy. It would be easy to argue that this distinction does not serve any obvious purpose of standing doctrine. The court must investigate the facts of Lyons' encounter with the police; it must find whether the acts of the offending officer were authorized by official departmental policy; and it must determine whether the individual acts or departmental policy were unlawful. Lyons must be trusted as an advocate on these matters; why not let him seek a more general and prospective remedy based on the same facts?")

claims that the issue is moot because it voluntarily changed its strip-search policy on May 24, 1999, after this lawsuit had started, to allow strip-searches of women held on misdemeanors only upon a finding of probable cause to believe the arrestee was concealing weapons or contraband. On September 20, 1999, the Defendant went even further, changing its policy to require a probable cause finding for all strip-searches, including those of women held on felonies.

## B. *Standing to Claim Injunctive Relief*

Although the plaintiff in *Lyons* had standing to seek compensatory damages for the injuries he suffered when subjected to a chokehold by the Los Angeles police, the Court held that he had no standing to seek injunctive relief because he failed to establish "a real and immediate threat" that he would again be stopped for a traffic violation and subjected to a chokehold. *Id.* at 105, 103 S.Ct. 1660.

Likewise, Defendants here contend that Mack's claims of future injury, and those of Plaintiffs, are speculative; they have not shown that there is any likelihood that they will be arrested again, be detained, and thus, be vulnerable to another strip-search.

Defendants' reliance on *Lyons* is misplaced. The decision did not hinge entirely on the likelihood that Lyons would be detained at a traffic stop in the future. Indeed, if that is all *Lyons* means—that Plaintiff has to prove the likelihood of future arrests—42 U.S.C. § 1983 would be gutted. The only people who could seek injunctive relief would be those that the police were truly "out to get," those alleging malice who could count on future police encounters.

Apart from such unfortunates, no one can predict future arrests. Indeed, any rational plaintiff would strive to avoid them. Nevertheless, some groups of people are more

vulnerable than others. Plaintiffs with a criminal record, for example, are more likely to be arrested and detained than those with no criminal history. *See, Lake v. Speziale,* 580 F.Supp. 1318 (D.Conn.1984) (plaintiff who had been incarcerated on two occasions for contempt for failure to meet child support obligation had standing to challenge contempt procedures in light of plaintiff's poverty and likelihood of future proceedings); *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (plaintiff who had been stopped by the police on 15 occasions in two years had standing to seek injunctive relief); *Deshawn E. v. Safir,* 156 F.3d 340 (2d Cir.1998) (a class of children arrested on delinquency charges would suffer harm from the NYPD's mandatory interrogation policy.)

Mack and Plaintiffs in the case at bar are similarly vulnerable. The Suffolk County Defendants concede that "the majority of women who are brought to the Jail have prior criminal records, and have been held at the Jail before."[6] Under the circumstances, it is not unreasonable to conclude that future arrests are likely.[7]

In any event, the Court characterized its holding more narrowly, remarking that Lyons would have to demonstrate not only that the triggering event, detention at a traffic stop, was likely, but also that the police would conduct themselves in a highly implausible fashion at the stop, in order to establish his standing to seek injunctive relief:

[i]n order to establish an actual controversy in this case, Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either, (1) that all police officers in Los Angeles always choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning

---

6. *Defendants Suffolk County, Richard J. Rouse and Jane Doe's Opposition to Plaintiff's Second Motion for Class Certification* [docket entry # 35], p. 13.

7. Obviously, no plaintiff subject to being strip-searched can sue mid-search. By the time she comes to court, the offending act is over. Yet, she may pursue a claim if the injury she alleges

is capable of repetition, but evades review due to the inherently temporary nature of the injury. *Honig v. Doe,* 484 U.S. 305, 318, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). As discussed above, Mack and Plaintiffs in the case at bar demonstrated that, at the time Mack filed her complaint, there was a reasonable likelihood that they would be arrested and strip-searched again.

or, (2) that the City ordered or authorized police officers to act in such manner. . . . We note that five months elapsed between October 6, 1976, and the filing of the complaint, yet there was no allegation of further unfortunate encounters between Lyons and the police.

*Id.* at 106–08, 103 S.Ct. 1660.

Because the conduct challenged by Lyons was episodic, occurring only when police officers determined that the use of a chokehold was necessary, rather than a routine procedure, authorized for use at every traffic stop, Lyons' claim that he was likely to be subjected to a chokehold at a traffic stop in the future was speculative. *Id.* at 108, 103 S.Ct. 1660.

■ In the instant case, more than a "practice" is at issue. This was an iron clad policy. It applied to every woman detained, regardless of offense. It was in place at the time Mack and each of the Plaintiffs was arrested and at the time Mack filed her complaint. Unlike the plaintiff in *Lyons*, they could predict with utter certainty that any woman arrested by the Boston Police and detained at the Suffolk County Jail, no matter what the charge, would be strip-searched.[8] As Mack and the intervening Plaintiffs have demonstrated that, at the time the complaint was filed, a real and immediate threat of future injury existed, they have standing to seek injunctive relief.

### C. Mootness

The case law, recently clarified by the Supreme Court in *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.,* —— U.S. ——, 120 S.Ct. 693, 708, 145 L.Ed.2d 610 (2000), makes it clear that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of

the practice." *See also, City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1983). If it did, the courts would be compelled to leave the defendant "free to return to his old ways." *Laidlaw,* 120 S.Ct. at 708, *Mesquite,* 455 U.S. at 289, n. 10, 102 S.Ct. 1070.

The Defendants bear a particularly heavy burden of establishing mootness if the challenged policy had been in place at the time the suit was filed. *Id.* A defendant who it is alleged, was doing wrong, then voluntarily complies with the standards sought by plaintiffs, "bears a formidable burden of showing that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.*[9]

In *Laidlaw,* the court did not find the case moot where the defendants had stopped discharging pollutants after the complaint was filed, and indeed, where the entire facility was closed, dismantled and put up for sale. Laidlaw still had its permit to discharge pollutants, a permit whose terms it had violated. As such it was not "absolutely clear that Laidlaw's permit violations could not reasonably be expected to recur." *Id.* at 710.

A similar situation presents itself here. While it is true that the Suffolk County Defendants' change in policy diminishes the chances that Mack, Plaintiffs, or members of the proposed class, will be strip-searched without a reasonable suspicion of concealed weapons or contraband in the future, it does not eliminate that possibility. Absent the imperative imposed by an injunction, these Defendants are free to reinstate the objectionable practice at any time. *See, City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 288, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982).

---

8. If the allegedly illegal actions are taken pursuant to an official policy, the fact that any one member of a class cannot demonstrate a "real and immediate threat," *id.* at 105, 103 S.Ct. 1660, that she will be arrested again does not mean that there is not a "real and immediate threat" that the illegal conduct will occur again. As the *Lyons* Court did not indicate that it intended to preclude injunctive relief for such plaintiffs, I read the case as allowing such relief

under other circumstances such as the ones set forth in the case at bar.

9. Similarly, in *Lyons*, had there been initial standing, the moratorium on the use of chokeholds "would not have mooted an otherwise valid claim for injunctive relief because the moratorium was by its terms not permanent." *Lyons,* 461 U.S. at 101, 103 S.Ct. 1660.

Defendant Suffolk County claims that it changed its policy to comport with First Circuit constitutional standards for strip-searches established in *Swain v. Spinney,* 117 F.3d 1 (1997). However, on June 25, 1997, *Swain* held that *all* strip-searches, not just those performed on persons held for misdemeanors,[10] must be justified by at least a finding of reasonable suspicion. Furthermore, earlier First Circuit authority indicates that all strip-searches must be justified by individualized suspicion that the arrestee was concealing weapons or contraband. *Blackburn,* 771 F.2d at 564-5. The fact that defendant Suffolk County maintained its blanket strip-search policy for almost fourteen years after the *Blackburn* decision was issued and for almost two years after *Swain* suggests that Defendant changed its policy to avoid liability in the case at bar rather than to comport with constitutional standards. Since the Suffolk County Defendants obviously did not feel bound by First Circuit authority regarding strip-searches before Plaintiff filed her complaint, there surely is a risk that Defendants will feel free to resume their policies and practices at the close of this litigation. As Defendants have not made it "absolutely clear" that they will not reinstate their blanket strip-search policy, their voluntary changes in policy do not moot Plaintiff's claims for injunctive relief.

## D. *Class Certification*

In order to maintain a class action, Plaintiff must demonstrate that she, and the class she wishes to represent, meet all four requirements of Fed.R.Civ.P. 23(a) and fit into one of the categories enumerated in Fed. R.Civ.P. 23(b). To meet the threshold requirements of Fed.R.Civ.P. 23(a), Plaintiff must establish that the proposed class she has the following qualities:

(1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are

typical ... of the class'); and, (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class').

*Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The initial inquiry required by Rules 23(a) and (b) does not involve an examination of the merits of the underlying case, but rather serves the limited purpose of determining whether a class action is the most appropriate mode of adjudicating plaintiff's claims. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

### 1. *Numerosity*

Rule 23(a)(1) provides that a member of a class may sue on behalf of all class members only if "the class is so numerous that joinder of all members is impracticable." Plaintiff Mack cannot currently specify the exact number of women in the class she wishes to represent. However, she estimates that several thousand female pre-arraignment detainees were subject to the challenged policies between December 10, 1995, and December 10, 1998. Plaintiff has yet to extract the names of women in the relevant groups—pre-arraignment detainees and women arrested on a default warrant—who were strip-searched—from the larger listing of all women admitted into the county's custody during this period.[11]

The fact that a class is so numerous as to render identification difficult is itself an indication that joinder of proposed class members as plaintiffs would be impracticable and a class action would be more appropriate. *Yaffe v. Powers,* 454 F.2d 1362, 1366 (1st Cir.1972) (indicating that Rule 23 was drafted to accommodate civil rights actions in which the members of the class are often incapable of specific enumeration). As Defendants have not challenged the proposed class on this ground, and as it seems likely that the class will include several thousand

---

10. As noted above, the first policy change on May 24, 1999, required a finding of reasonable suspicion to search women charged with misdemeanors only.

11. Plaintiff's amended complaint excludes those women who were being held in protective custody.

women, I conclude that Plaintiff has satisfied the numerosity requirement of Rule 23(a)(1).

### 2. *Commonality and Typicality*

The second and third prongs of Rule 23(a) require plaintiff to demonstrate that "there are questions of law or fact common to the class" and that "the claims or defenses of the representative parties are typical of the claims of the class."

Defendants argue both that Plaintiff's claims are not typical of those of the class she wishes to represent and that her claims do not share common questions of law or fact with those of other class members. In support of this proposition, Defendants note that each of the class members came into custody under different circumstances and on different charges: some women in the class were frequent offenders, some were not; some women were charged with felony offenses, some with misdemeanors; some women were held pending arraignment, some women were held on a default warrant. Defendants also argue that intervening Plaintiff Joanne Maniscalco's claims are not the same as those of Plaintiff Katrina Mack and other class members who were arrested and searched after the issuance of *Swain v. Spinney* in June of 1997. Defendants suggest that before this date, a blanket strip-search policy was permissible according to First Circuit case law.[12]

All of these differences between the proposed class members, while arguably relevant as defenses to liability, do not change the fact that this class action raises the same basic claim and shares common questions of law. While Rule 23(a)(2) requires Plaintiff to show that common questions of law or fact exist and that class members's claims are not in conflict with one another, it does not require that class members' claims be identical. *Guckenberger v. Boston University*, 957 F.Supp. 306, 325 (D.Mass.1997). *See also, Wilcox v. Petit*, 117 F.R.D. 314, 316 (D.Maine 1987). Furthermore, an assessment of whether class members share common questions of law or fact does not require an assessment of defendant's liability for plain-

tiffs' claims. *Lamphere v. Brown University*, 553 F.2d 714, 719, n. 11 (1st Cir.1977). Rather, objections to certification which involve the merits of plaintiffs' claims are best resolved at summary judgment. *Id.*

■ Mack, Plaintiffs, and the proposed class members share a common legal theory, that these searches were unconstitutional because, conducted pursuant to a blanket strip-search policy, they were not based on a reasonable suspicion that the individuals searched were concealing weapons or contraband. Therefore, Plaintiff has satisfied the requirements of Rule 23(a)(2) and (3) despite varying defenses to liability which may be raised regarding particular individuals. *See, Guckenberger*, 957 F.Supp. at 325–26 (challenge to school's blanket accommodations policy appropriate for class action despite fact that plaintiffs suffered from various disabilities).

### 3. *Adequacy of Representation*

Rule 23(a) states: "One or more members of a class may sue or be sued as representative parties on behalf of all only if .... (4) the representative parties will fairly and adequately protect the interests of the class." This rule requires that Plaintiff demonstrate that her interests will not conflict with those of class members and that her counsel is qualified, experienced and able to vigorously conduct the proposed litigation. *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir.1985). I have already determined that Plaintiff's claims do not conflict with those of the proposed class members but rather state common injuries and legal theories. Furthermore, Plaintiff's counsel is an experienced and successful civil rights attorney. Defendants do not challenge the adequacy of Plaintiff's representation. Accordingly, I find that Plaintiff has satisfied the requirements of Rule 23(a)(4) and will fairly and adequately protect the interests of the class.

### 4. *Defendants Acted on Grounds Generally Applicable to Class as Whole*

Rule 23(b)(2) requires Plaintiff to demonstrate that "the party opposing the class has

---

12. This last distinction does not hold water because, as I noted above, I believe that it was clear as far back as 1985 that individualized

suspicion was required for a strip-search. *Blackburn v. Snow*, 771 F.2d 556, 563 (1st Cir.1985)

acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." This section of Rule 23 was designed to accommodate civil rights class actions in which the members of the class may be difficult to enumerate. *Advisory Committee's Note To 1966 Amendment to Rule 23.*

Defendants do not deny that they acted on grounds generally applicable to the class but rather focus on their assertions that the requested declaratory relief is inappropriate as Plaintiff lacks standing to seek declaratory relief. As I explain at length above, I find that Plaintiff, and the class she seeks to represent, has standing to seek this relief. Therefore, certification under Rule 23(b)(2) is appropriate.

### 5. *Common Questions Predominate*

Rule 23 requires that Plaintiff demonstrate not only that she shares common questions of law or fact with the proposed class but also, if she seeks 23(b)(3) certification, that these common questions "predominate over any questions affecting only individual members."

Both the City and the Suffolk County Defendants claim that certification is improper under 23(b)(3) because individual, rather than common, questions predominate. Together they argue that the reasonableness of the searches challenged in this action must be evaluated individually, by examining the facts surrounding each search,[13] and conclude that Plaintiff has not satisfied the requirements of 23(b)(3). In addition, the Suffolk County Defendants argue that because Plaintiff's Equal Protection claim only applies to the City's conduct, common questions of law

do not predominate over individual questions and thus certification under Rule 23(b)(3) is inappropriate.[14]

■ As I explained earlier in my discussion of the requirements of 23(a)(2), Mack, Plaintiffs, and the proposed class members all share a common legal claim against the Defendants as they all claim to have been subjected to the very same conduct, an unconstitutional strip-search.[15] Significantly, they also share a common Equal Protection Clause claim against the City as they are all women who were or will be transported by the City to the Suffolk County Jail. And, as noted above, they share Fourth Amendment challenges to both based on a blanket strip-search policy. They claim to have suffered the same injuries, and are pursuing the same legal theories. To require Plaintiff to prove that each individual search was unsupportable, as well as indiscriminate, would be unnecessary and unfair. Given that these women were routinely strip-searched, the burden rests on Defendants to demonstrate that particular searches were reasonable. *See, Doe v. Calumet City, Illinois,* 754 F.Supp. 1211, 1220 (N.D.Ill.1990) (plaintiffs not required to show that defendants lacked reasonable belief that individual plaintiffs were concealing weapons or contraband where plaintiffs had shown the strip-search policy to be routine and indiscriminate).

### 6. *Class Action Superior Method of Adjudication*

The final hurdle Plaintiff must clear under Rule 23(b)(3) is the requirement that she demonstrate that a class action is a fair and efficient method of adjudicating the contro-

---

**13.** *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Although the question of class certification was not discussed by the *Bell* Court, I note that this case involved, amongst other issues, a class action challenge to a jail's strip-search policy.

**14.** On this point, Defendants seem to be at odds because the Suffolk County Defendants argue that the Equal Protection claim creates a separate question of law whereas the City argues that this claim is "hopelessly and inextricably intertwined" with the issue of whether Plaintiff's Fourth Amendment rights were violated. *The*

*Defendant City Of Boston's Opposition To The Plaintiff's Second Motion For Class Certification* [docket entry # 32], p. 3

**15.** The question of whether the City of Boston and Suffolk County are separate legal entities is hotly contested but is not relevant to this discussion. For the purposes of class certification, I need only determine whether the proposed class has sufficient common legal claims against both Defendants. Which Defendant is liable for which constitutional violations is a question best reserved for a later stage in this litigation.

versy and would be superior to other methods. Defendants allege that this case is not suitable for class certification because the litigation of the class claims will require a multitude of "mini-trials" on liability and damages.

As to liability, it is likely, given the uniform and indiscriminate nature of the strip-search policy at issue, that liability can be determined on a class-wide rather than an individual basis.[16] Furthermore, although individualized inquiries into the impact of the searches on particular class members may be necessary, the potential for differing amounts of restitution does not automatically preclude class certification. *Samuel v. University of Pittsburgh*, 538 F.2d 991, 995 (3rd Cir.1976). Should a genuine problem arise due to variability in damage claims, I will consider subclasses or, at worse, decertifying the class.[17]

Finally, Defendants suggest that a class action would be a waste of judicial resources where individual damages are likely to be minimal. This reasoning runs contrary to the very purpose of Rule 23(b)(3) which seeks to vindicate "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem Products v. Windsor* 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. *Id.* A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir.1997).

## III. *CONCLUSION*

Plaintiff Katrina Mack and the intervening Plaintiffs represent scores of women who share a common complaint against Defendants which overshadows any individual questions. These women raise serious allegations concerning the conduct of the Defendants and justice requires that their complaints be addressed promptly and efficiently. I find that Plaintiffs, Mack and the intervenors, meet the requirements Rule 23, both in letter and in spirit. Therefore, Plaintiff's Second Motion for Class Certification [docket entry # 25] and the Motion to Intervene [docket entry # 29] are **GRANTED.**

The parties are also **ORDERED** to submit a new proposed litigation schedule by February 28, 2000.

**SO ORDERED.**

---

**16.** *See, Doe v. Calumet City, Illinois,* 754 F.Supp. 1211, 1220 (N.D.Ill.1990) (defendant cannot avoid liability by manufacturing post-hoc basis for strip-searches which were conducted pursuant to indiscriminate and routine policy); *Smith v. Montgomery County, Maryland,* 573 F.Supp. 604, 612 (D.Md.1983) (resolution of liability for and damages resulting from indiscriminate strip-search policy more efficiently settled within context of class action).

**17.** *See, Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1267 (7th Cir.1983) (23(b)(2) class action challenging City's strip-search policy decertified for purpose of damage determination).