Timothy S. MANEELY, on behalf of himself and all others similarly situated, Plaintiff,

v.

**CITY OF NEWBURGH, et al., Defendants.**

**No. 01 CIV. 2600(CM).**

United States District Court, S.D. New York.

May 16, 2002.

James Edward Monroe, Dupee & Dupee, P.C., Goshen, NY, for plaintiff.

David Merrill Posner, McCabe & Mack, LLP, Poughkeepsie, NY, Marilyn D. Berson, Newburgh, NY, Patrick T. Burke, Burke, Miele & Golden, Goshen, NY, James M. Fedorchak, Gellert & Cutler, P.C., Poughkeepsie, NY, for defendants.

## MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL CLASS CERTIFICATION

MCMAHON, District Judge.

Plaintiff, Timothy S. Maneely, brings this action under 42 U.S.C. § 1983, alleging that the City of Newburgh maintained a policy of strip searching all pre-arraignment prisoners, including those arrested for misdemeanors and violations. Maneely seeks to represent a class of persons who were strip searched before arraignment, and in the absence of reasonable suspicion to believe that they were carrying or concealing weapons or contraband, between March 27, 1998 and March 27, 2001.

Plaintiff moved simultaneously for class certification and summary judgment. Defendants asked the Court to defer issuing a ruling on the question of liability until the motion for class certification was decided. I agreed to this in an order dated November 15, 2001.

The class certification motion is granted, but limited to the issue of whether defendants maintained an unconstitutional strip search policy. The Court will decide that issue in the next 60 days and will issue an order affording appropriate relief to the class.

## FACTUAL BACKGROUND

On June 4, 2000, Maneely was arrested and charged with one count of obstructing governmental administration in the second degree (a Class A Misdemeanor), one count of leaving the scene of an accident (a Class B Misdemeanor), and harassment in the second degree (a non-criminal offense). (Compl.¶ 8.) Maneely was approximately 20 years-old and had been arrested on one prior occasion as a youthful offender. (Compl.¶ 8.) The arresting officers took him to the City of Newburgh Police Department. (Compl.¶ 38.) At the police station, officers of the City of Newburgh Police Department ordered him to strip naked, bend over and squat revealing his sexual organs and anal cavity for visual inspection. (Compl. ¶ 38; 40.) He was then placed in a cell to await arraignment. According to Maneely, during the strip search he was informed by the arresting officer that everyone had to go through this procedure. (Compl.¶ 39;)

Maneely filed this action on March 27, 2001. Plaintiff argues that, from 1995, defendants instituted and enforced a policy that required the systematic strip search of all persons being held awaiting arraignment by the City of Newburgh Police Department. (Compl.¶ 2.) Defendants' policy did not distinguish between persons charged with lesser offenses, nor did it require officers to consider whether there was reasonable suspicion to believe that a particular detainee was carrying a weapon or contraband. (Id.)

This is not the first time defendants have been sued regarding their strip search policy.

In *Huck v. City of Newburgh*, 275 A.D.2d 343, 712 N.Y.S.2d 149 (2000), decided on August 14, 2000, the plaintiff, Huck, alleged that she was improperly strip searched in a Newburgh police station. Huck had been arrested for possession of an unlicensed dog. *Id.*, at 344, 712 N.Y.S.2d 149. She was taken to the police station and strip searched pursuant to the City of Newburgh's policy of strip searching all arrestees detained in a cell. There was no evidence that either the arresting officer or the person who performed the search suspected that she possessed any weapons or contraband. The Appellate Division therefore reversed a jury verdict in favor of the City, finding that the search was unconstitutional. *Id.*

Defendants argue that, on August 24, 2000, in response to the Appellate Division's decision in *Huck*, the Newburgh Police Department changed its policy regarding strip searches. (Def's Mem. of Law in Opp. to Class Certification, at 2.) This new policy was formalized in a memorandum dated October 2, 2000. (*Id.*) Plaintiff notes that the department made these changes only a few days after the defendants received plaintiff's Notice of Claim, which was served on or about August 16, 2000. Plaintiff argues that it was this Notice of Claim, and not the decision in *Huck*, or any earlier controlling precedents, that prompted defendants to change their formal policy.

In this action, plaintiff seeks: a declaratory judgment declaring that a strip search of a pre-arraignment arrestee undertaken absent reasonable suspicion that the arrestee is concealing weapons or other contraband is unconstitutional; (ii) an order enjoining defendants from implementing or enforcing such a policy; (iii) compensatory damages for the injuries caused by defendants' unlawful conduct; and (iv) punitive damages assessed against the individual defendants to deter such intentional, reckless and unlawful disregard for the well-settled Constitutional law of the United States and the State of New York. Plaintiff seeks class certification under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

Defendants argue that the motion for class certification should be denied because questions about each class member's individual situation predominate over any common issues. They assert that as a result of the implementation of the revised protocol for strip searches in August 2000, plaintiff's claims for declaratory and injunctive relief are moot. Therefore compensatory and punitive damages are the only relief that the plaintiff seeks. Defendants further argue that, because the putative class action seeks only money damages, individual damage questions predominate over the common questions and a class action is not a superior method for adjudicating the controversy under Rule 23(b)(3). Fed.R.Civ.P. 23(b)(3).

## DISCUSSION

◼ The Supreme Court has held that district courts must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class. *General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *see also Caridad v. Metro–North Commuter R.R.,* 191 F.3d 283, 291 (2d Cir.1999). The district court has broad discretion in certifying a class, but class certification standards should be applied liberally. *Gary Plastic Packaging Corp. v. Merrill Lynch,* 903 F.2d 176, 179 (2d Cir.1990); *Selby v. Principal Mut. Life Ins. Co.,* 197 F.R.D. 48, 54 (S.D.N.Y.2000). In deciding a motion for class certification, the district court must treat all of the allegations of the complaint as true. *Pecere v. Empire Blue Cross and Blue Shield,* 194 F.R.D. 66 (E.D.N.Y.2000) (citing *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). "[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *In re Visa Check/MasterMoney Antitrust Litigation,* 280 F.3d 124, 133 (2d Cir.2001) (citing *Eisen,* 417 U.S. at 178, 94 S.Ct. 2140).

## I. Standing and Mootness of Injunctive Relief

Defendants argue that the lead plaintiff does not have standing to seek injunctive or declaratory relief because there is no likelihood that he or any other potential class member will be subjected to this same conduct in the future. They also argue that any claim for injunctive relief would be moot since the policy has already been changed to conform with controlling precedent. Defendants contend that since this Court cannot grant injunctive relief to the class as a whole, individual questions of liability and damages would predominate over any common issues, and class certification is inappropriate. Therefore, I must first decide whether Maneely has standing to seek injunctive relief.

◼ In order to meet the standing requirement of Article III of the United States Constitution, a plaintiff must demonstrate an injury in fact, causation of that injury, and a likelihood that the requested relief will redress that injury. *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 103, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury in fact requirement, but must show a likelihood that he or she will be injured in the future. *City of Los Angeles v. Lyons,* 461 U.S. 95, 105–06, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Steel Co.,* 523 U.S. at 108, 118 S.Ct. 1003.

### A. Standing

Defendants argue that Maneely has no standing to seek injunctive or declaratory relief because there is no likelihood that defendant will be subjected to this same conduct in the future.

Defendants rely on *Lyons,* 461 U.S. at 105–06, 103 S.Ct. 1660. In *Lyons,* the plaintiff sought declaratory and injunctive relief against the Los Angeles police, claiming he had been illegally choked by Los Angeles police officers. *Id.* at 98, 103 S.Ct. 1660. Although he alleged that the Los Angeles police routinely applied choke holds and that he faced a threat of being illegally choked

again in the future, the Supreme Court held that plaintiff's allegations of future injury were too speculative and dismissed the case for lack of standing. *Id.* at 109–11, 103 S.Ct. 1660. The Court stated that in order to allege standing, Lyons would need to establish "(1) that all police officers in Los Angeles always choke any citizen with whom they happen to have an encounter, ... or, (2) that the City ordered or authorized police officers to act in such manner." *Id.*

■ Following the standard set forth in *Lyons,* the Second Circuit has held that a plaintiff may have standing to seek injunctive relief against a police department if the alleged improper actions were conducted pursuant to a uniform practice or official policy. In *Deshawn E. ex rel. Charlotte E. v. Safir,* 156 F.3d 340, 343 (2d Cir.1998), the Second Circuit held that a group of plaintiffs had standing to sue for equitable relief where there was an officially-endorsed policy of submitting arrestees to coercive interrogations. In this case, plaintiff alleges that at the time that the department was given notice of this suit, there was an official policy of strip searching all arrestees who were detained in a cell. Maneely thus has standing to seek injunctive relief.

### B. Mootness

Defendants argue that, as their strip search policy has been changed to conform with the law, plaintiff's claim for injunctive relief is moot. Plaintiff does not contest the department's contention that the policy has been changed. Instead, Maneely argues that an injunction is needed to prevent the department from reverting to its old ways once this lawsuit is finished.

■ The Supreme Court has stated that a "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of that practice." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). A suit will be rendered moot by a defendant's voluntarily change in a policy only if it is "absolutely clear that the alleged wrongful behavior could not reasonably be expected to recur." *Laidlaw,* 528 U.S. at 189, 120 S.Ct. 693 (quoting *United States v. Concentrated Phosphate Export Ass'n,* 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968)). The party asserting mootness has a "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Id.* (internal citations omitted).

Defendants claim that they did not change their behavior in response to this lawsuit, which was filed seven months after they changed their policy. However, defendants did receive plaintiff's Notice of Claim before they changed their policy. Furthermore, defendants' assertion that there is no basis for plaintiff to assume that the department will resume its old practices rings hollow, given how long it took them to conform their policy to law regarding the constitutionality of strip searches, which has been clear since at least 1995. *See Shain v. Ellison,* 273 F.3d 56, 62–66 (2d Cir.2001).[1] The fact that the department disregarded the law on strip searches for five years causes this Court to question defendants' sincerity about maintaining their policy in conformity with the law.

■ Defendants were wise to change their policy after *Huck,* and would be extremely foolish to revert back to an unconstitutional policy at this point. However, I agree with the reasoning in *Mack v. Suffolk County,* 191 F.R.D. 16, 22 (D.Mass.2000), that a police department's delay in conforming its behavior to controlling precedent increases the risk that the department will resume its old ways

---

1. Actually the law has been settled for far longer. No law enforcement officer is permitted to search a misdemeanor arrestee absent individualized reasonable suspicion. In *Weber v. Dell,* 804 F.2d 796, 803 (2d Cir.1986), the Second Circuit held that:

 the Fourth Amendment precludes prison officials from performing strip/body cavity searches of arrestees charged with misdemeanors or other minor offenses unless the officials have a reasonable suspicion that the arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest.

 This holding was affirmed in *Walsh v. Franco,* 849 F.2d 66, 68–69 (2d Cir.1988) and *Wachtler v. County of Herkimer,* 35 F.3d 77 (2d Cir.1994).

at the end of pending litigation. *Mack,* 191 F.R.D. at 22 (holding that "[w]hile it is true that the ... Defendants' change in policy diminishes the chances that ... members of the proposed class will be strip searched without a reasonable suspicion of concealed weapons or contraband in the future, it does not eliminate that possibility. Absent the imperative imposed by an injunction, these Defendants are free to reinstate the objectionable practice at any time."). Given that it took the defendants well over five years to conform Newburgh's strip search policy with the law, it is not "absolutely clear" that defendants will not "return to their old ways." *Laidlaw,* 528 U.S. at 189, 120 S.Ct. 693. Thus, plaintiff's claim for injunctive relief is not moot.

## II. Class Action Requirements

The basic criteria for the certification of a class action are:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a); *Visa Check,* 280 F.3d at 132–33; *Shankroff v. Advest, Inc.,* 112 F.R.D. 190, 193 (S.D.N.Y.1986).

Additionally, one of the three elements of Rule 23(b) must also be satisfied. *See Visa Check,* 280 F.3d at 133; *Bresson v. Thomson McKinnon Securities,* 118 F.R.D. 339, 344–45 (S.D.N.Y.1988). In this case, plaintiff proceeds under Rule 23(b)(3). Therefore, class certification is appropriate only if "the Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

### A. Rule 23(a)

#### 1. Numerosity

■ Rule 23(a)(1) provides that a member of a class may sue on behalf of all class members only if "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Plaintiff need not prove the exact number of class members, only that the class is so numerous that the joinder of all potential plaintiffs would be difficult or inconvenient. *See Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993); *Pecere v. Empire Blue Cross and Blue Shield,* 194 F.R.D. 66, 69 (E.D.N.Y.2000); *Primavera Familienstiftung v. Askin,* 178 F.R.D. 405, 409 (S.D.N.Y.1998).

Defendants concede that there are too many potential class members in this case for joinder to be practical. They argue instead that the number of potential plaintiffs is so large that it would be unmanageable. This argument relates to the manageability of the class, rather than the numerosity requirement.

■ Plaintiff has estimated from the statistical data of the City of Newburgh Police Department that several thousand pre-arraignment detainees or arrestees were strip searched between March 27, 1998 and March 27, 2001, the proposed class period. While one can fairly infer that some of those detainees/arrestees were strip searched in a constitutionally-compliant manner, one can also infer that there were enough unconstitutional searches that joinder of all members would be impracticable. Therefore, plaintiff has met the Rule 23 numerosity standard.

#### 2. Commonality

The second prong of the Rule 23(a) test requires plaintiff to demonstrate that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Rule 23(a)(2) does not require the plaintiff to demonstrate that the class members' claims are identical. *Caridad,* 191 F.3d at 293. Rather, it demands that the disputed issue of law or fact "occup[ies] essentially the same degree of centrality to the named Plaintiffs' claim as to that of other members of the proposed class." *Krueger v. New York Tel. Co.,* 163 F.R.D. 433, 442 (S.D.N.Y.1995); *see also In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 145, 166–67 (2d Cir.1987). The com-

monality requirement may be met where the individual circumstances of class members differ, but "their injuries derive from a unitary course of conduct by a single system." *Marisol A. v. Giuliani,* 126 F.3d 372, 377 (2d Cir.1997) (per curiam) (finding commonality where a proposed class of children argued that "a unitary course of conduct" by the city department for children's services would place them at risk of abuse or neglect).

 Defendants concede that the uniform application of a blanket strip search policy (assuming one existed) presents questions of law and fact that are common to the proposed class. The common legal issue is whether the defendants implemented a uniform, indiscriminate policy of strip searching all detainees, in the absence of reasonable suspicion. This satisfies the commonality requirement. *See Augustin v. Jablonsky,* No. 99 CV 3126(DRH)(ARL), 2001 WL 770839, at *4 (E.D.N.Y. Mar. 8, 2001) (finding commonality in a strip search class action because the "common factual question occupying a position of 'centrality' to this litigation is whether Defendants engaged in a policy under which all members of the putative plaintiff class were strip searched ... without individualized legal suspicion"); *Daniels v. City of New York,* 198 F.R.D. 409, 413 (S.D.N.Y.2001) (finding that the commonality requirement was satisfied for a putative class of arrestees where the claimed injuries resulted from an unconstitutional practice of stopping and frisking individuals without the reasonable suspicion required by the Fourth Amendment). Discussion of whether individual issues will overwhelm the common question is reserved until the predominance inquiry under Rule 23(b)(3). *See Visa Check,* 280 F.3d at 136 n. 3; *Augustin,* 2001 WL 770839, at *4–5 (citing *Daniels,* 198 F.R.D. 409, 417–18 (S.D.N.Y.2001); *In re Copley Pharm., Inc.,* 158 F.R.D. 485, 489, 491 (D.Wyo.1994)).

### 3. Typicality

The typicality requirement mandates that the claims of the class representatives must be typical of those of the class. This requirement is satisfied "if the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Marisol A. ex rel. Forbes v. Giuliani,* 929 F.Supp. 662, 691 (S.D.N.Y.1996). Defendants do not contest that the "typicality" requirement is satisfied, despite the different factual circumstances surrounding each arrest, since each has the same question at its core—whether defendants maintained an unconstitutional strip search policy.

### 4. Adequacy of Representation

The adequacy of representation requirement is two-fold: plaintiff's counsel must be qualified and experienced enough to conduct the class action litigation, and the interests of the named plaintiff must not be adverse to those of the class.

Plaintiff has demonstrated that the law firm of Dupée, Dupée & Monroe, P.C. and Robert N. Isseks are experienced attorneys in the field of civil rights suits and class actions. Defendants do not contest that the proposed counsel in this case have substantial experience, but argue that plaintiff's attorneys have not adequately prosecuted this case because they waited too long after filing the complaint before submitting a motion for class certification. Defendants also assert that if counsel had been aware of defendants' current strip search policy they would have realized they could not maintain a(b)(3) class. I disagree with defendants that the issues here are so clear-cut. Plaintiff's counsel has diligently prosecuted this case, and are clearly qualified to represent the class.

Maneely's fitness to serve as the named plaintiff is more complicated. Plaintiff argues that he shares a common legal theory with the proposed class members, in that they all were subjected to strip searches conducted pursuant to an unconstitutional blanket strip search policy that did not take into account whether there was reasonable suspicion that the individuals searched were concealing weapons or contraband. Plaintiff asserts that the defendants' policy of strip searching all arrestees charged with criminal or non-criminal offenses represents a course of conduct directed against every person arrested and held in the City of Newburgh Police Department during the class period.

Defendants respond that Maneely is not an adequate class representative because his strip search was, proper under the "reasonable suspicion" standard, and thus Maneely suffered no constitutional violation. They note that before Maneely may be found to be an adequate representative for the class, the Court would have to hold a hearing to decide whether the officers lacked reasonable suspicion to believe that he was concealing a weapon or contraband, thereby providing cause to conduct a strip search. Defendants are correct. No person could become a member of the class Maneely proposes to represent—a class consisting of all persons who were strip searched in the absence of reasonable cause—until it was determined that there was no reasonable suspicion for a search in his individual case. The policy may have applied to everyone, but clearly some persons who were strip searched pursuant to the policy did not suffer any violation of their constitutional rights.

I am not going to certify the class Maneely seeks to represent. Instead, I am going to certify a broader class, but on a narrower issue (*see infra* at 78)—one that Maneely shares with the class to be certified. Maneely was strip searched. He is an adequate representative on the issue for which class treatment is appropriate because he has the same interests as the rest of the proposed class in establishing that defendants maintained an unconstitutional blanket strip search policy. That he may be precluded from recouping damages at a recovery stage is irrelevant, because the individual questions of reasonable suspicion arise only after the fact of an unconstitutional blanket strip search policy is established.

### B. Rule 23(b)(3)

A class action may be maintained under Rule 23(b)(3) if the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting individual members, and that a class action is superior to all available methods for the fair and just adjudication of the controversy. Fed.R.Civ.P. 23(b)(3).

To meet the Rule 23(b) predominance standard, plaintiff must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof." *Visa Check,* 280 F.3d at 136 (citations and internal quotations omitted). The 23(b)(3) predominance requirement is "more stringent" and "far more demanding than" the commonality requirement of Rule 23(a). *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 623–24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *see also Blyden v. Mancusi,* 186 F.3d 252, 269 (2d Cir.1999) (referring to the "heightened requirements" of Rule 23(b)(3)).

The Rule sets forth four factors for the court to consider in deciding the superiority of a class action:

(1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of the class action.

Fed.R.Civ.P. 23(b)(3); *Amchem,* 521 U.S. at 615–16, 117 S.Ct. 2231 (1997).

Plaintiff asserts that the uniform application of defendants' blanket strip search policy presents questions of law and fact that are common to the proposed class. Plaintiff argues that defendants did not conduct an individualized assessment of the need for each search, and therefore deprived each potential plaintiff of his constitutional rights. Hence, all potential plaintiffs have a single legal theory, which arises under similar factual circumstances.

Defendants argue that individual issues respecting class membership and personal damages claims will predominate over the common issues that plaintiff identifies.

District court judges have disagreed about whether to certify classes in cases with facts similar to this one. A number of courts have granted class certification, *see e.g., Eddleman v. Jefferson Co.,* 96 F.3d 1448 (6th Cir.1996) (unpublished disposition); *Ford v. City of*

*Boston,* 154 F.Supp.2d 131 (D.Mass.2001); *Doan v. Watson,* No. 99–4–C (S.D.Ind. Mar. 2, 2000) (cited in 168 F.Supp.2d 932, 933 n. 1 (S.D.Ind.2001)); *Mack v. Suffolk Co.,* 191 F.R.D. 16, 23 (D.Mass.2000); *Tyson v. City of New York,* No. 97 CIV–3762 (S.D.N.Y. Mar. 18, 1998) (oral decision) (cited in *Augustin v. Jablonsky,* No. 99 CV 3126(DRH)(ARL), 2001 WL 770839, at *11–12 (E.D.N.Y. Mar. 8, 2001)); *Gary v. Sheahan,* No. 96–C–7294, 1999 WL 281347 (N.D.Ill. Mar.31, 1999), appeal dismissed, 188 F.3d 891 (7th Cir.1999); *Doe v. Calumet City,* 128 F.R.D. 93 (N.D.Ill.1989); *Smith v. Montgomery Co.,* 573 F.Supp. 604 (D.Md.1983), while others have refused to allow such cases to proceed on a class-wide basis, *see e.g., Mary Beth G. v. City of Chicago,* 723 F.2d 1263 (7th Cir.1983); *Augustin,* 2001 WL 770839, at *1 (E.D.N.Y. Mar.8, 2001); *Noon v. Sailor,* No. NA99–0056–C–H/G, 2000 WL. 684219, at *1 (S.D.Ind. Apr.17, 2000); *Bledsoe v. Combs,* No. NA99–153–C–H/G, 2000 WL 681094 (S.D.Ind. Mar.14, 2000); *Klein v. DuPage Co.,* 119 F.R.D. 29 (N.D.Ill.1988).

In *Augustin,* for example, Judge Hurley considered the "predominance" question of Rule 23(b)(3) as applied to a strip search case and concluded that certification was inappropriate because class members' individual damage claims would dominate the case. 2001 WL 770839, at *13. In reaching this conclusion, the *Augustin* court expressed concern that each plaintiff would have to present individualized proof of damages. He noted, however, that the court in *Tyson v. City of New York* was not as troubled by the damages question, because the court could seek the assistance of a magistrate judge or a special master if resolving individual damage issues became unmanageable. No. 97 CIV–3762 (S.D.N.Y. Mar. 18, 1998) (oral decision) (cited in *Augustin,* at * 11–12).

Despite Judge Hurley's well-reasoned opinion, Second Circuit cases decided after *Augustin* suggest that individual damage questions in this case do not automatically prevent class certification. In *Visa Check,* plaintiffs brought an action against Visa and MasterCard, alleging that the companies violated the antitrust laws by requiring stores to accept their debit cards if they accepted their credit cards. 280 F.3d 124. The Second Circuit affirmed the district court's certification of a class of "all persons and business entities who have accepted Visa and/or MasterCard credit cards and therefore are required to accept Visa Check and/or MasterMoney debit cards under the challenged tying arrangements. . . ." *Id.* at 131. At "the heart of defendants' predominance argument" was their contention that individual damage questions would predominate over common issues. *Id.* at 138. The *Visa Check* Court noted that the fact that a defense "may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Id.* (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray,* 208 F.3d 288, 296 (1st Cir.2000)). The Second Circuit reminded district courts that "[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Id.* at 139. The Court found that the defendants' mitigation defense related to individual damage calculations only, and did not negate the fact that there was "a sufficient constellation of common issues bind[ing] the class members together." *Id.* at 138 (citing *Waste Mgmt.,* 208 F.3d at 296).

Of course, the facts of this case differ from those in *Visa Check* in significant ways. In *Visa Check,* plaintiffs presented expert economic evidence establishing a formula for damages in order to overcome defendants' objection that each class member's damage claim was unique. *Id.* at 138–40. In contrast, in this case each plaintiff has a unique situation with relation to damages issues. This is not a business or other financial claim where a mechanical application of economic or accounting theories will result in an appropriate damage figure.

Furthermore, in *Visa Check,* class membership was easily established—because the businesses who accepted Visa and MasterCard credit cards could readily be identified. Here, the mere fact that an individual was strip searched will not place him in the class. An across-the-board policy of strip searching, as deplorable as it may be, does not render every search that a police department con-

ducts unconstitutional. If there was "reasonable suspicion" to believe that a detainee was concealing a weapon or contraband, a strip search may have been constitutional. Thus, the circumstances of each putative class member's arrest would have to be evaluated in order to determine who is and who is not a member of the class. *See Noon v. Sailor*, No. NA99–0056–C–H/G, 2000 WL. 684219, at *1 (S.D.Ind. Apr.17, 2000) (denying class certification in strip search case, noting that in order to determine who is or is not a member of the class, the court would have to "consider all the circumstances of the individual arrest, detention and search"). For each individual who responded to the class notice, defendants would be entitled to offer proof either that no search was in fact done or (more likely given the policy at the time) that the search was lawful due to the nature of the charge or the facts and circumstances surrounding the arrest and the arrestee. Numerous individuals seeking class membership would have their eligibility challenged in evidentiary hearings.

Plaintiff argues that the fact that reasonable suspicion will be contested in the case of each individual plaintiff should not preclude certification because the defendant should have the burden of proving that any given search was reasonable. Plaintiff relies on *Mack* for this proposition. *Mack*, 191 F.R.D. at 24 (citing *Doe v. Calumet City, Illinois*, 754 F.Supp. 1211, 1220 (N.D.Ill.1990)). In that case, the court rejected the argument that "the reasonableness of the searches challenged ... must be evaluated individually, by examining the facts surrounding each search," and held that:

> [t]o require Plaintiff to prove that each individual search was unsupportable, as well as indiscriminate, would be unnecessary and unfair. Given that these women were routinely strip searched, the burden rests on Defendants to demonstrate that particular searches were reasonable.

*Id.* (citing *Doe v. Calumet City, Illinois*, 754 F.Supp. at 1220) (finding that plaintiffs were not required to show that defendants lacked reasonable belief that individual plaintiffs were concealing weapons or contraband

where plaintiffs had shown the strip search policy to be routine and indiscriminate).

Plaintiff's analysis begs the question. No matter which party has the burden of proof, the question still requires individualized determination, based on the circumstances surrounding each strip search.

■ However, it would be improper to let manageability concerns overwhelm the predominance decision. There is a common issue at the core of this case—whether defendants maintained an unconstitutional blanket strip search policy during the class period. Whether defendants are collaterally estopped from arguing that they maintained a constitutional policy in light of the *Huck* decision also presents a common legal issue. I find that these common issues represent "a sufficient constellation of common issues bind[ing] the class members together." *Visa Check*, 280 F.3d at 138.

Under Federal Rule 23(c)(4)(A), a district court may certify a class with respect to particular issues. Fed.R.Civ.P. 23(c)(4)(A). Plaintiff has suggested partial certification, noting that the *Augustin* court considered partially certifying a class, but declined to do so because the plaintiffs' had not submitted a proposal for partial certification. 2001 WL 770839, at *14. The Second Circuit has urged district courts to take advantage of partial certification in order to "reduce the range of disputed issues in complex litigation and achieve judicial efficiencies." *Robinson v. Metro–North Commuter R.R.*, 267 F.3d 147, 167–68 (2d Cir.2001) (internal quotations and citations omitted); *see also Visa Check*, 280 F.3d at 140–41.

In light of the common issues in this case, I find that partial certification of a class is appropriate. I therefore certify a class as to the issue of whether the City of Newburgh maintained a policy of strip searching all pre-arraignment prisoners, with or without having reasonable suspicion to believe that these persons were carrying or concealing weapons or contraband. The class will consist of all persons who were strip searched before arraignment by the Newburgh Police Department between March 27, 1998 and March 27, 2001. Since defendants contest that they maintained an unconstitutional strip search

policy, despite *Huck* (*see* Def's. Mem of Law in Opp. to Class Certification, at p. 1), judicial efficiency will be served by deciding this issue on a class-wide basis, once and for all.

If the class prevails on these issues, then individual plaintiffs can come forward to litigate, in individual suits, the issue of whether their rights were violated and whether they suffered damages.

While potential plaintiffs in these individual suits may well be economically and socially marginalized persons, resolving their common claims on a class-wide basis will provide incentive for them to bring suit. If class counsel obtains a judgment that Newburgh had a blanket strip search policy, it will be res judicata in each individual lawsuit. Because plaintiffs who prevail in these cases— even those who recover nominal damages— may recoup attorneys' fees under 42 U.S.C. § 1988, any misdemeanor or violation arrestee whose crime did not involve drugs or weapons should be able to obtain counsel. *Mid Hudson Legal Servs., Inc. v. Grand Union, Inc.*, 578 F.2d 34, 37 (2d Cir.1978); *Helbrans v. Coombe*, 890 F.Supp. 227 (S.D.N.Y.1995); *see also Augustin*, at *13– 14.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for partial class certification is granted.

Plaintiff has already moved for summary judgment on the underlying issue of the existence of an unconstitutional strip search policy in Newburgh. The stay of consideration of that motion is now lifted. Defendants have 20 days from today's date to serve a response to plaintiff's motion. This date will not be extended. Plaintiff then will have 10 days to serve a reply—again, with no extension. The Court will issue its decision 30 days thereafter.

Should the class plaintiff prevail, there remains the question of what, if any, class-wide relief will be appropriate in addition to the entry of a declaratory judgment. Two issues occur to the Court: should notice of the Court's decision be sent to the class members, and should the statute of limitations (which has been tolled for putative class members since the filing of the complaint, *see Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 353–54, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983)) be further tolled to give individuals who may be affected by the decision, and by the Court's refusal to certify the class originally requested, an opportunity to obtain counsel to pursue their individual claims. I ask that class counsel weigh in on these issues within 10 days. Defendants' counsel should respond to plaintiff's submission in their responsive papers on the motion.

This constitutes the decision and order of the Court.

