**Joseph H. PYKE, individually and as personal representative of the Estate of Matthew Pyke, May P. Cole, Charles Benedict, Patricia A. Benedict, Julius M. Cook, Beverly J. Pyke, Edward Smoke, Selena M. Smoke, Margaret Pyke Thompson, on behalf of themselves and all other persons similarly situated, Plaintiffs,**

v.

**Mario CUOMO, Thomas A. Constantine, Robert B. Leu and Ronald R. Brooks, Defendants.**

**No. 92–CV–554.**

United States District Court, N.D. New York.

July 1, 2002.

2. The same would be true in Maine state court. *Patten I*, 468 A.2d at 622.

Boies Schiller & Flexner, David A. Barrett, Jeffrey S. Shelly, of counsel, Albany, NY, for Plaintiffs.

Hon. Eliott Spitzer, Attorney General of the State of New York, Christopher W. Hall, Assistant Attorney General, of counsel, Albany, NY, for Defendants.

## MEMORANDUM–DECISION AND ORDER

McCURN, Senior District Judge.

### Introduction

The court assumes familiarity with the protracted history of this litigation, which until now has focused primarily upon the viability of plaintiffs' equal protection claims. Presently before the court is plaintiffs' motion for class certification pursuant to Fed. R.Civ.P. 23. In addition to seeking class certification, the nine named plaintiffs seek to be certified as the class representatives, and to have this court "approve" the law firm of Boies, Schiller & Flexner as counsel for the plaintiff class. *See* Plaintiffs' Memorandum of Law in Support of their Motion for an Order Certifying the Class and Maintaining this Action as a Class Action ("Pl.Memo.") at 15.

### Discussion

Prior to analyzing the merits of plaintiffs' class certification motion, it is necessary for the court to consider one procedural and two substantive opposition arguments which the defendants raise. First, defendants argue that this class certification motion is untimely. Second, they assert that the Sec-ond Circuit bars "plaintiffs' 'fluid recovery' damages proposal[,]". Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification ("Def.Memo.") at 17. Third, defendants argue that plaintiffs' class definition is "impermissibly vague and broad." *Id.* at 16. This court will address each of these arguments in turn and then, if necessary, turn to a consideration of the merits of plaintiffs' class certification motion.

### I. Timeliness

More than ten years ago, on April 30, 1992, this action was commenced, yet plaintiffs have not moved for class certification until now. Succinctly put, defendants contend that it is simply too late in the day for class certification.

Rule 23 does not contain a specific time frame in which a motion for class certification must be filed. Subdivision (c)(1) of that Rule simply states, "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." Fed.R.Civ.P. 23(c)(1). The purpose of the "as soon as practicable" requirement is "to ensure that the parties may take the existence of class claims into account as they conduct the litigation[.]" *Cruz v. Coach Stores, Inc.,* No. 96 CIV. 8099, 1998 WL 812045, at *3 (S.D.N.Y. Nov. 18, 1998) ("*Cruz I*") (internal quotation marks and citation omitted), *aff'd in part, vacated in part, on other grounds,* 202 F.3d 560 (2d Cir.2000). "Indeed, 'fundamental fairness requires that a defendant named in a suit be told promptly the number of parties to whom it may ultimately be liable.'" *Id.* (quoting *Siskind v. Sperry Retirement Program, Unisys,* 47 F.3d 498, 503 (2d Cir.1995)).

The Second Circuit, in *In re Philip Morris Inc. v. National Asbestos Workers Medical Fund,* 214 F.3d 132 (2d Cir.2000), a case upon which the defendants heavily rely, interpreted the "as soon as practicable" language of Rule 23(c)(1) as requiring that class certification motions be decided prior to trial. Beyond that, the Second Circuit has not provided any further guidance on the timing of such motions. The Court in *Philip Morris* did emphasize, though, that in making that

ruling it did "not intend to abrogate district courts' discretion to decide when to determine class certification." *Id.* at 135 (citation omitted). By the same token, the Second Circuit stated that " 'as soon as practicable' does not confer unfettered discretion, especially in the context of Rule 23(b)(3), where damages are at stake." *Id.* (citation omitted). Indeed, the Circuit Court commented that it had "previously noted the onerous effect of failing to decide class certification promptly, finding that a district court's failure to decide class certification 'early in the proceedings not only produced below an atmosphere of confusion, but also made [its] appellate review more difficult.' " *Id.* at 134 (quoting *Henry v. Gross,* 803 F.2d 757, 769 (2d Cir.1986)).

There is scant case law in this Circuit regarding the meaning of "as soon as is practicable" for purposes of Rule 23. *Cruz I* does provide one example, however. There, the plaintiff "did not move for class certification until nine months after the Second Amended Complaint was filed and following the close of eight months of discovery." *Cruz I,* 1998 WL 812045, at *3. Compounding that delay was the fact that in the meantime, "two months before serving her motion for class certification, plaintiff unilaterally withdrew a request for a pre-motion conference," thus "strongly suggesting she was abandoning any claim for class treatment[.]" *Id.* at *3 and *3, n. 2. In denying plaintiff's motion for class certification, the court in *Cruz I* reasoned that "[b]y so delaying, plaintiff assured that any granting of its motion would severely prejudice defendant, as well as undermine the efficiency of the judicial process." *Id.*

In the present case, the defendants "strongly suggest plaintiffs should have filed their motion *years* before now[,]" noting that the complaint was filed more than ten years ago. Def. Memo. at 6. Furthermore, since

the remand from the Second Circuit last July, plaintiffs have "waited until three-fourths of the discovery period ha[s] passed before filing the instant motion." *Id.* The defendants also point out that "it is surprising" that plaintiffs did not move for class certification soon after this court observed that omission in *Pyke I*,[1] especially because at that time it was already more than three years after the filing of the complaint; there had been limited discovery; and the court had decided two substantive motions. The defendants further contend that they would be prejudiced by granting class certification now because they have "been lulled by plaintiffs' 10 year delay, ... fairly assum[ing] they faced a nine codefendant tort case and litigated accordingly." *Id.* Finally, without any explanation, defendants assert that "[c]ertification now would significantly alter[ ] the nature of the case to that of a 'mass tort' and affect [their] litigation strategy accordingly." *Id.*

When pressed during oral argument as to how their litigation strategy would have changed if class certification had been sought and granted earlier, defendants candidly replied that they could only "speculate." In speculating, they focused on the possibility that a settlement strategy might have been developed. Defendants further contended that given the passage of time and the court's observation in 1995, they assumed plaintiffs had abandoned the possibility of seeking class certification. Further, that they would be prejudiced by class certification at this late date in that defense witnesses, along with absent class members, might not be found; memories may have faded; and documents may have been lost.

Plaintiffs countered that "defendants have not been prejudiced by any unreasonable delay[,]" explaining that "the delay ... has been caused by Defendants' decade-long ef-

---

1. Roughly six and a half years ago, this court observed that "[c]urrently there are nine named plaintiffs[,] each suing on their own behalf, as well as on behalf of all other persons similarly situated." *Pyke I,* 1995 WL 694624, at * 10, n. 1. At that same time, this court observed that "[d]espite the fact that their complaint is styled as a class action, and that Fed.R.Civ.P. 23(c)(1) requires the court to determine by order '[a]s soon as practicable after the commencement of [such] action [ ]' whether the action shall be maintained as a class action, the plaintiffs have yet to move for class certification." *Id.* More recently, in September 2000, this court again commented that the plaintiffs still had not moved for class certification. *See Pyke II,* 2000 WL 1456283, at *1, n. 1.

fort to evade their constitutional obligations by seeking to dismiss the complaint." Reply Memorandum of Law in Support of Plaintiffs' Motion for Class Certification ("Reply") at 2. Moreover, plaintiffs note that if defendants "truly believed they were being prejudiced by the absence of a decision on class certification, they could have sought an order at any time that would have imposed a deadline for a certification motion[,]". *Id.* at 3. Nor did defendant ever request a scheduling order for the filing of such a motion. As to the possibility of a changed defense strategy in the form of a possible settlement, such a settlement, which would have been in the nature of class-wide relief, was pursued very early in this litigation; but it never came to fruition. Plaintiffs explained during oral argument that their decision not to seek class certification earlier was due in part to the way in which this litigation unfolded, with defendants insisting upon early resolution of the similarly situated element of an equal protection claim.

Given the significant lapse in time between the filing of the complaint and the filing of this motion for class certification, *i.e.,* ten years, combined with the fact that this court has decided two substantive motions, and the Second Circuit has already heard one appeal in this action, initially it might appear that this motion is untimely, but it is *not.* This is not a case such as *Gross,* another case upon which the defendants rely, where this court "declined to certify this action as a class action until the proceedings were nearly concluded." *See Gross,* 803 F.2d at 769. Indeed, this is the first time the court has been faced with such a motion and this case is far from conclusion. Furthermore, also in contrast to *Gross,* here "the parties were [*not*] often at a loss to determine the nature of the proceedings." *Id.*

As mentioned at the outset, to date the parties have focused on the viability of the equal protection claims, almost completely to the exclusion of all other issues. Clearly the defendants were not at a loss as to how to proceed in that regard, despite the lack of class certification. What is more, ultimately in *Gross,* the Second Circuit found *no* prejudice despite the district court's failure to certify a class until the action was nearly over—a fact defendants in this action conveniently overlook. *See id.* Likewise, this case is readily distinguishable from *Philip Morris,* another case upon which defendants are relying, because there counsel made repeated requests for class certification and the trial was imminent, *see Philip Morris,* 214 F.3d at 135; whereas here, this is the first such request for certification and the trial is anything but imminent.

Furthermore, granting class certification at this juncture in the present action does not violate the Supreme Court's stricture against "deciding class certification after conducting a preliminary inquiry into the merits of plaintiffs' case." *See id.* at 134 (citing *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). Despite the motion practice in this case and one appeal, there has not been a preliminary inquiry into the merits of plaintiffs' case. Rather, the only issue which has been resolved is that in order to establish an equal protection claim, plaintiffs will not be required to show disparate treatment of other similarly situated individuals. Thus, granting class certification at this juncture will still be in advance of any ruling on the actual merits of plaintiffs' equal protection claim. Indeed, it appears that the parties are still engaged in discovery on such claim. For all of these reasons, the court rejects defendants' argument that this class certification motion is untimely.

## II. *"Fluid Recovery" Damages*

In their complaint, plaintiffs explicitly allege that "[a]ll amounts recovered in this action, including damages attributable to injuries to individual class members, will be placed in a common fund to be used *solely* for the *benefit* of the *members* of the *plaintiff class*[.]" Co. at 5–6, ¶ 15 (emphasis added). This allegation is reiterated in plaintiffs' "WHEREFORE" clause, in which they specifically "request . . . that all amounts recovered in this action be held in trust for the use and benefit of the plaintiff class." *Id.* at 22, WHEREFORE clause at ¶ a. Defendants read that language to mean that plaintiffs are relying upon what is referred to as the "fluid

recovery" damage theory, which defendants claim "[t]he Second Circuit has expressly rejected[.]" *See* Def. Memo. at 17. In light of the foregoing, defendants implicitly argue that because plaintiffs are relying upon a fluid damage theory of recovery and because supposedly that theory is unavailable in this Circuit, the court should deny class certification on this basis as well.

Simply put, "[f]luid recovery refers to the distribution of unclaimed or unclaimable funds to persons not found to be injured but who have interests similar to those of the class." *In re NASDAQ Market–Makers Antitrust Litigation*, 169 F.R.D. 493, 525 (S.D.N.Y.1996) (citation omitted). This "approach is most frequently used for the purpose of distributing the residue of a class settlement fund, . . ., [but] it has also been utilized as a means for distributing the entirety of a class fund where the proceeds cannot be economically distributed to the class members." *In re Microsoft Corp. Antitrust Litigation*, 185 F.Supp.2d 519, 523 (D.Md.2002) (citations omitted). "Fluid recovery" is primarily invoked in antitrust litigation, "in the context of class actions, [where] class members are difficult to identify, where they change constantly, or where there are unclaimed damage or settlement funds." *See Weber v. Goodman*, No. CV–97–1376, 1998 WL 1807355, at *5 (E.D.N.Y. June 1, 1998) (citations omitted). "Application of th[is] doctrine, . . ., permits funds from class actions to be distributed to the next best class when the class plaintiffs cannot be compensated individually." *Id.* (citation omitted). Given this explanation of fluid damage recovery, it is not surprising that at oral argument the plaintiffs clarified that they are *not* invoking this theory of recovery. Consequently, there is no need for the court to address this particular defense argument; and the same does not preclude class certification here.

### III. Class Definition

■ In their complaint plaintiffs allege that they are bringing "this action as a class action on behalf of all members of the Akwesasne community other than those persons named as defendants in an action entitled

. . . *Pyke v.* . . . . *Laughing,* filed in the United States District Court for the Northern District of New York, and persons acting in concert with the defendants in that action." Complaint ("Co.") at 5, ¶ 14. In their supporting memorandum, the proposed class definition is slightly more detailed than that contained in the complaint:

> All members of the Akwesasne community other than those persons named as defendants in an action entitled *Joseph H. Pyke, et al. v. Anthony ("Tony") Laughing, et al.,* filed in the United States District Court for the Northern District of New York, and persons acting in concert with the defendants in that action, constituting a class of individuals who suffered injuries as a result of the unlawful acts of the defendants in the present action.

Pl. Memo. at 2. Plaintiffs offer to "refine" this definition by omitting the phrase "and persons acting in concert with" the *Pyke v. Laughing* defendants, thereby restricting the excluded individuals to those defendants specifically-named in that action. *See* Reply at 6–7.

Defendants respond that even with that redaction, the proposed class definition is "impermissibly vague and broad" because "members" and "Akwesasne community" are "vague" terms. Def. Memo. at 15–16. Part of defendants' objection to those terms is that because the Canadian border bisects the reservation, the proposed definition would include Canadian residents which would roughly double the size of the proposed class. *See* Affidavit of F. Henry Lickers (Nov. 30, 1998), exh. 1 thereto at 2. Furthermore, according to defendants, plaintiffs' proposed class definition improperly requires the court to determine whether each of the 8,000 prospective class members' rights were violated. Neither of those arguments is convincing.

"[W]hile Rule 23(a) does not expressly require that a class be definite in order to be certified, a requirement that there be an identifiable class has been implied by the courts." *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 209 F.R.D. 323, 336 (S.D.N.Y.2002) (internal quotation marks and citations omitted); *see also Catanzano By Catanzano v. Dowling*, 847

F.Supp. 1070, 1078 (W.D.N.Y.1994) (same), *aff'd on other grounds,* 60 F.3d 113 (2d Cir. 1995) (internal quotation marks and citations omitted). "This implied requirement is often referred to as ascertainability." *MTBE Products Liability,* 209 F.R.D. at 336 (internal quotation marks and citation omitted). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Id.* (internal quotation marks and citations omitted). On the other hand, "[w]here ... criterion is subjective, *e.g.,* state of mind, the class is not ascertainable." *Id.* (citation omitted). In addition, "[i]t must ... be administratively feasible for a court to determine whether a particular individual is a member of the class." *Id.* at 336, n. 20 (internal quotation marks and citations omitted). "The Court must be able to make this determination without having to answer numerous fact-intensive inquiries." *Id.* (internal quotation marks and citation omitted). In the end, however, "[d]istrict judges have broad discretion over class definition." *Nicholson v. Williams,* 205 F.R.D. 92, 96 (E.D.N.Y.2001) (citing, *inter alia, Boucher v. Syracuse Univ.,* 164 F.3d 113, 118 (2d Cir. 1999)).

There is no need for the court to address the merits of plaintiffs' equal protection claims to identify putative class members. The proposed definition, while not ideal, focuses on membership in the Akwesasne community—not upon possible constitutional violations against each prospective member. Thus, despite defendants' assertion to the contrary, this is not a situation which "would require the court to determine whether a person's constitutional rights had actually been violated in order to determine whether that person [i]s a class member." *See Catanzano,* 847 F.Supp. at 1079 (internal quotation marks and citation omitted). Nor does class membership here require the court to engage in a fact-intensive inquiry as to each potential member. As will be seen, the class definition which this court is going to adopt

contains sufficient objective criteria to avoid such an inquiry.

Furthermore, although the court disagrees with defendants that "members" and the "Akwesasne community" are inherently vague terms in this context, as the court mentioned during oral argument, it is revising plaintiffs' proposed definition. In fact, perhaps anticipating some of the court's concerns, during oral argument on the class definition issue, plaintiffs immediately recognized the need for a time frame and proposed June, 1989 through May, 1990, which the court adopts. Likewise, so as to further define the class, plaintiffs suggested adding the word "residing" to the proposed definition. The court also accepts this addition.

The court is unwilling, however, to define the class so broadly that it includes members of the Akwesasne community residing on the Canadian portion of the reservation. While the distinction between the Canadian and American residents of the Akwesasne community in plaintiffs' view is "artificial," nonetheless, the court will draw that distinction. It is proper to draw that distinction because at least at this juncture it appears that plaintiffs' damage claims were sustained on and/or arise out of actions on the United States portion of the reservation.[2] Inclusion of those Akwesasne community members residing on the Canadian portion of the reservation also is problematic because, as explained during oral argument, those individuals have their own police protection. Furthermore, although New York, with certain exceptions which are not applicable here, has civil and criminal jurisdiction over all Indian reservations in the State, including the Akwesasne or St. Regis reservation, plainly that jurisdiction does not extend beyond the borders of this State. *See* 25 U.S.C. §§ 232 and 233 (West 2001). Moreover, during oral argument plaintiffs readily agreed that the absence of the Canadian members of the Akwesasne community did not significantly alter the complexion of this case or its importance.

---

**2.** In making this conclusion, the court is heeding the Second Circuit's direction for deciding the issue of certification: "[A] judge must look somewhere between the pleading[s] and the fruits of discovery ... [E]nough must be laid bare to let the judge survey the factual scene on a kind of sketchy relief map, leaving for later view the myriad of details that cover the terrain." *See Philip Morris,* 214 F.3d at 135 (internal quotation marks and citation omitted).

Accordingly the court finds that the class, defined as follows, is sufficiently definite to be certified, provided plaintiffs can establish the other requirements of Rule 23:

> All members of the Akwesasne community residing on the United States portion of the ancient Mohawk Indian reservation known as Akwesasne or St. Regis, during June, 1989 through May, 1990, other than those persons named as defendants in an action entitled *Joseph H. Pyke, et al. v. Anthony ("Tony") Laughing, et al.,* No. 92–CV–555, filed in the United States District Court for the Northern District of New York, constituting a class of individuals who claim injuries as a result of the alleged unlawful acts of the defendants in the present action.

### *IV. Class Certification*

Having found that this motion is timely; that the fluid recovery theory does not bar class certification; and that the class definition as reworded is sufficiently definite, the court must next consider whether plaintiffs can satisfy the explicit requirements of Rule 23. Under that Rule there is a two-step analysis for determining whether class certification is proper. First of all, "[t]o qualify for certification, plaintiffs must prove that the putative class action meets the four requirements set forth in Federal Rule of Civil Procedure 23(a):

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class."

*In re Visa Check,* 280 F.3d at 132–33 (citations omitted). "Additionally, a class action may be maintained *only if* it qualifies under at least one of the categories provided in Rule 23(b)." *Id.* at 133 (emphasis added). In the present case, the defendants are relying only Rule 23(b)(3).[3]

"A court should only grant a motion to certify a proposed class if it 'is satisfied, after a *rigorous analysis,* that the prerequisites of Rule 23(*a*) have been satisfied.'" *Russo v. CVS Pharmacy, Inc.,* 201 F.R.D. 291, 293 (D.Conn.2001) (quoting *Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)) (emphasis added). "However, the law in the Second Circuit favors the liberal construction of Rule 23 and courts may exercise broad discretion when they determine whether to certify a class." *Id.* (citing *Gary Plastic Packaging Corp. v. Merrill Lynch,* 903 F.2d 176, 179 (2d Cir.1990)); *see also Marisol A. v. Giuliani,* 126 F.3d 372, 377 (2d Cir.1997) (*"Marisol II"*) (internal quotation marks and citation omitted) ("Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility[.]") "Moreover, 'courts should resolve all doubts about whether a class should be created in *favor* of *certification.'" In re Magnetic Audiotape Antitrust Litigation,* No. 99 CIV. 1580, 2001 WL 619305, at *1 (S.D.N.Y. June 6, 2001) (emphasis added) (quoting *In re Indus. Diamonds Antitrust Litig.,* 167 F.R.D. 374, 378 (S.D.N.Y.1996)).

Because "[f]ailure to prove any element precludes certification[,]" *see LeGrand v. New York City Transit Authority,* No. 95–CV–0333, 1999 WL 342286, at *3 (E.D.N.Y. May 26, 1999) (citing, *inter alia, Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997)), and because there is ample authority supporting the proposition that "[t]o be eligible for class certification, plaintiffs must *first* show that the proposed class satisfies all four requirements of Rule 23(a)[,]" *Marisol v. Giuliani,* 929 F.Supp. 662, 689 (S.D.N.Y.1996) (*"Marisol I"*) (emphasis added) (citing, *inter alia, Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993)), *aff'd,* 126 F.3d 372, the court will first address the four elements of that Rule. Plaintiffs' failure to meet their burden on any one of these elements, would obviate the need to move to step two of the certifica-

---

**3.** Originally plaintiffs were attempting to come within the ambit of Rule 23(b)(1)(A), Rule 23(b)(2) *and/or* Rule 23(b)(3). Plaintiffs readily conceded during oral argument, however, that

their only "realistic" possibility of satisfying Rule 23 was to rely upon subdivision (b)(3) of that Rule. The court will, therefore, limit its analysis accordingly.

tion analysis—satisfaction of at least one of the Rule 23(b) categories.

### (1) Numerosity

■ As mentioned above, the relevant inquiry under Rule 23(a)(1) is whether the class is "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). "In determining whether the numerosity requirement has been satisfied, a court should consider the circumstances surrounding the case to determine if joinder is impracticable, rather than simply looking at the numbers." *In re AMF Bowling Securities Litigation*, No. 99 CIV. 3023, 2002 WL 461513, at *3 (S.D.N.Y. March 26, 2002) (citations omitted). "Impracticable does not mean impossible[,]" however. *See Robidoux*, 987 F.2d at 935. "Generally, courts will find a class sufficiently numerous when it comprises forty or more members." *Edge v. C. Tech Collections, Inc.*, 203 F.R.D. 85, 89 (E.D.N.Y.2001) (citing *Robidoux*, 987 F.2d at 936). "A plaintiff need not provide a precise quantification of their class, and courts may make common sense assumptions' to support a finding of numerosity." *Id.* (internal quotation marks and citation omitted). But, "[w]here the plaintiff's assertion of numerosity is pure speculation or bare allegations, the motion for class certification fails." *Id.* (and cases cited therein). In the present case the complaint, as well as the declaration of attorney Shelly, indicates that the class is comprised of over 8,000 members. *See* Co. at 6, ¶ 17; and Declaration of Jeffrey S. Shelly (June 20, 2002) at 1, ¶ 3. If, as set forth above, Canadian residents are excluded, the class will consist of roughly 4,000 members. The Shelley declaration further states, "Many of these [putative class] members have limited financial means, making certification of the class their only practical opportunity for judicial recourse." Shelly Decl'n at 1–2, ¶ 3. A class comprised of 4,000 members is obviously numerous, and renders joinder "impracticable." The fact that many of these potential class members purportedly are of limited financial means also contributes to a finding of impracticability. *See Karen L. Ex Rel. Jane L. v. Physicians Health*, 202 F.R.D. 94, 100 (D.Conn.2001) (citations omitted). Indeed, at oral argument defendants readily conceded that plaintiffs have shown the requisite numerosity. Consequently, the court finds that plaintiffs easily have met their burden of establishing the first element of class certification pursuant to Fed.R.Civ.P. 23(a).

### (2) Commonality

■ "The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." *Marisol II*, 126 F.3d at 375 (citations omitted). "The crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Id.* (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982)). "Under Rule 23(a)(2), there must be questions of law or fact common to the class." *AMF Bowling Securities*, 2002 WL 461513, at * 4 (citations omitted). "However, there is no requirement that the claims of the potential class members ... have every issue of law and fact in common." *Physicians Health*, 202 F.R.D. at 100 (citation omitted). "Factual differences in the individual claims, therefore, are not fatal." *Marisol I*, 929 F.Supp. at 690 (citing, *inter alia, Califano v. Yamasaki*, 442 U.S. 682, 701, 99 S.Ct. 2545, 2557, 61 L.Ed.2d 176 (1979)).

Here, plaintiffs assert that "[t]he lack of police protection by Defendants and the resulting consequences to the Plaintiffs are the 'common nucleus' that unites all members of the class." Pl Memo. at 10. They further reason that "[t]here have been no claims that any Plaintiff was singled out or targeted individually by Defendants. All of the class members suffered a collective harm and the claims and facts, as set forth by the named representatives, apply equally to all members of the proposed class." *Id.* Plaintiffs go on to identify three specific questions of law and fact which they claim are "common" and "arise" from defendants' alleged actions or inactions:

1) Were the Defendants obligated to intercede in the gambling and violence that took place on the St. Regis Reservation? 2) Was the Defendants' refusal to provide police protection to the class members based on considerations of race and national origin? 3) If the refusal was based on consideration of race and national origin, were the class members deprived of equal protection under the United States Constitution? *Id.*

In this court's opinion, plaintiffs have shown the requisite commonality because the issues just identified "occup[y] essentially the same degree of centrality to the named Plaintiffs' claim[s] as to that of other members of the proposed class." *See Maneely v. City of Newburgh,* 208 F.R.D. 69, 74 (S.D.N.Y.2002) (internal quotations and citations omitted). All of the members of the proposed class share the common circumstance of having been present on the Reservation during the relevant time frame, and purportedly of having been harmed by the defendants alleged failure to provide adequate police protection. Thus, the present case falls into the category of cases where "[t]he commonality requirement [is] . . . met where the individual circumstances of class members differ, but 'their injuries derive from a unitary course of conduct by a single system.'" *Id.* (quoting *Marisol II,* 126 F.3d at 377).

Defendants' only argument against a finding of commonality is that individual claims predominate and consequently there are no common issues of law or fact here. However, the court will reserve "[d]iscussion of whether individual issues will overwhelm common question[s] . . . until the predominance inquiry under Rule 23(b)(3)." *See id.* (citing, *inter alia, In re Visa Check/Mastermoney Antitrust Litigation,* 280 F.3d 124, at 136 n. 3 (2d Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 2382, 153 L.Ed.2d 201 (2002)).

### (3) Typicality

■ "Typicality, . . ., requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol II,* 126 F.3d at 376 (internal quotation marks and citations omitted). "There is no requirement that 'the factual background of each named plaintiff's claim be identical to that of all class members.'" *AMF Bowling Securities,* 2002 WL 461513, at *4 (quoting *Caridad v. Metro–North Commuter Railroad,* 191 F.3d 283, 293 (2d Cir.1999)) (other citation omitted). "Rather, typicality 'requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiffs' claim as to that of other members of the proposed class.'" *Id.* "As long as plaintiffs asserts, as they do here, that defendants committed the same wrongful acts in the same manner, against all members of the class, they establish [the] necessary typicality." *In re Towers Financial Corp. Noteholders Litigation,* 177 F.R.D. 167, 170 (S.D.N.Y.1997) (internal quotation marks and citation omitted). In short, "the test for typicality 'is *not* demanding[.]'" *MTBE Products Liability,* 209 F.R.D. at 336 (emphasis added) (quoting *Forbush v. J.C. Penney Co.,* 994 F.2d 1101, 1106 (5th Cir.1993)) (other citation omitted).

As with the commonality requirement, plaintiffs have established typicality. Plaintiffs' claims all arise from the same course of events, the defendants' alleged failure, between May, 1989 and June, 1990, to provide adequate police protection during to members of the Akwesasne community who were residing on the United States portion of the reservation during that time. Likewise, there are disputed issues of law, such as whether defendants alleged failure to provide police protection was based on race and national origin and whether plaintiffs were deprived of their constitutional right to equal protection and protection rights were violated, which are typical of all members of the proposed class.

■ Again, defendants only opposition to a finding of typicality is that individual damage claims predominate over any "typical" claims such as those just stated. However, "[u]nder

this elastic standard [of typicality,] named plaintiffs can represent class members who suffer different injuries so long as all of the injuries are shown to result from the same practice." *Nicholson,* 205 F.R.D. at 99 (citation omitted). In fact, "[b]ecause typicality does not require that the class representative claims be identical to those of the class, *differences* in *damages* will *not* destroy typicality." 5 *Moore's Federal Practice* § 23.24[05] (emphasis added). Thus the fact that the named plaintiffs may have suffered different injuries from those sustained by other class members does not, as defendants suggest, undermine a finding of typicality here, where allegedly the injuries were all caused by defendants' failure to provide adequate police protection. In light of the foregoing, the court finds that plaintiffs have met the test for typicality.

### (4) Representativeness

Under Rule 23(a)(4), a party seeking class certification must show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R.Civ.P. 23(a)(4). This requirement "is motivated by concerns similar to those driving commonality and typicality requirements, namely, the efficiency and fairness of class certification." *Marisol II,* 126 F.3d at 378 (citing *Falcon,* 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13). There are two separate inquiries under Rule 23(a)(4). The first is "that plaintiffs demonstrate that class counsel is qualified, experienced, and generally able to conduct litigation." *Id.* (internal quotation marks and citation omitted). "In determining the adequacy of counsel, the court looks beyond reputation built upon past practice and examines counsel's competence displayed by present performance." *Towers Financial Corp.,* 177 F.R.D. at 171 (internal quotation marks and citation omitted). The second requirement is that "[p]laintiffs must ... demonstrate that there is no conflict of interest between the named plaintiffs and other members of the class." *Marisol II,* 126 F.3d at 378 (citation omitted).

Both of these requirements are met here. Given the experience of the Boies, Schiller & Flexner law firm in litigating large class action lawsuits, as detailed in the Shelly Declaration, *see id.* at 3, ¶ 7, the court finds that this firm is qualified to adequately represent the interests of the proposed plaintiff class and to conduct this litigation. Looking beyond the Boies firm's reputation, to counsels' competence as demonstrated by their performance in this case, also convinces the court that this firm is sufficiently qualified to represent the plaintiff class. The court has seen this case through ten years of litigation, some of it quite contentious. During that time, plaintiffs' counsel has diligently and vigorously litigated their clients' interests. Thus, the first prong of Rule 23(a)(4) is satisfied here.

As to the second prong, the court also finds unpersuasive defendants' argument that the fact that the first named plaintiff Joseph H. Pyke is pursuing damages for the wrongful death of his son, Matthew Pyke, will somehow "tear apart the cohesiveness of the class." Even though there may be some differences among the named plaintiffs and other class members in terms of the nature of the claimed injuries and the damages which they may ultimately recover, *all* class members have the same interest in litigating the equal protection claims which this action presents. *See Maneely,* 208 F.R.D. at 76 (named plaintiff "adequate representative on the issue for which class treatment is appropriate because he has the same interests as the rest of the proposed class in establishing that defendants maintained an unconstitutional blanket strip search policy[ ]"). Therefore, the court is not persuaded that the interests of the named plaintiffs are antagonistic to those of the other potential class members. Accordingly, irrespective of any differences in damages, the court finds that the named plaintiffs are fit to serve as class representatives. Plaintiffs have thus met the fourth requirement of Rule 24(a).

Even though plaintiffs have met all four requirements of Rule 24(a), as discussed above, that does not end the court's inquiry regarding the propriety of class certification. Plaintiffs still must qualify under one of the subsections of Rule 23(b), and they are attempting to qualify under subdivision (3) of that Rule.

### B. Rule 23(b)(3)

▮ The text of Rule 23(b)(3) states as follows:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition ... the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3). In essence this Rule requires that common issues predominate and that the class be a superior means of resolving the dispute.

### 1. Predominance

" 'The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.' " *Visa Check,* 280 F.3d at 136 (quoting *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). "In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof." *Id.* (internal quotation marks and citation omitted). "The 23(b)(3) predominance requirement is 'more stringent' and 'far more demanding than' the commonality requirement of Rule 23(a)." *Maneely,* 208 F.R.D. at 76 (quoting *Amchem,* 521 U.S. at 609 and

623, 117 S.Ct. at 2243 and 2250) (other citation omitted).

Although the parties agree that predominance is the relevant inquiry, not surprisingly they are on exact opposite sides of this issue. Plaintiffs contend that individual claims do *not* predominate over class-wide claims because not only are they "rely[ing] on common legal theories that arise from a common nucleus of facts[,]" but "[t]he same conduct of Defendants produces liability to all members of the class." *See* Pl. Memo. at 14. Further, plaintiffs contend that "[t]his collective liability subsumes individual questions, as the Defendants' actions were directed toward the class as a whole." *Id.*

Defendants respond that because plaintiffs "have brought a damages action[,] ... *individual questions 'predominate' over common ones[,]*" and thus plaintiffs cannot maintain a class action under Rule 23(b)(3). Def. Memo. at 7 (emphasis added). In particular, defendants assert that "individual questions abound and, thus predominate ... since they concern claims of personal injury, property damage and wrongful death for over 8,000 alleged instances of lack of police protection [4] ... and the individual damages flowing therefrom (e.g., medical expenses, emotional injuries, loss of time from work, etc.)." Def. Memo. at 10 (footnote added).

In making this argument, defendants rely heavily upon the Supreme Court's decision in *Amchem, supra,* and Judge Hurley's decision in *Augustin v. Jablonsky,* No. 99CV3126, 2001 WL 770839 (E.D.N.Y.2001). Neither of those cases, however, compel the conclusion that plaintiffs' damage claims herein predominate, thus rendering Rule 23(b)(3) inapplicable. In *Augustin,* a strip search case, the court did hold that class certification under that Rule was improper because class members' individual claims were predominant. *See id.* at *13. What defendants in the present action are failing to take into account, though, is that Judge Hurley found there were "individualized questions ... as to lia-

---

4. Defendants are misconstruing plaintiffs' complaint. The alleged lack of police protection does span a time frame of months, but the court does not read the complaint as alleging 8,000

separate incidents of same. The equal protection claims are based on the defendants' alleged continued failure to provide adequate police protection during the relevant time frame.

bility, proximate causation, *and* damages." *Id.* (emphasis in original). In contrast, in the present case, as already discussed, the liability issue is *not* individualized, but rather is common to the class as a whole.

Moreover, as the court astutely explained in *Maneely*, "[d]espite Judge Hurley's well-reasoned opinion, Second Circuit cases decided *after Augustin* suggest that individual damages questions in this case do not automatically prevent class certification." *Maneely*, 208 F.R.D. at 77 (emphasis added). Of particular significance in this regard is the Second Circuit's decision in *Visa Check*. In that antitrust action, the court was faced with a defense argument "that common issues ... do not predominate over the individual damage questions[.]" *Visa/Check*, 280 F.3d at 138 (footnote omitted). ⸢ Rejecting that argument the Second Circuit explicitly recognized that "[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *See id.* at 139 (and cases cited therein). In fact, while acknowledging that "[t]here are some situations where courts have determined that a case is not manageable as a class action because of the necessity for individualized damages determinations[,]" the *Visa Check* Court declared that "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule." *Id.* (internal quotation marks and citations omitted).

The district court in *Maneely* readily conceded the factual differences between that case, raising a constitutional challenge to a police department's policy of strip-searching all pre-arraignment prisoners, and the *Visa/Check* antitrust litigation. *See Maneely*, 208 F.R.D. at 77. The *Maneely* court also was keenly aware that "each plaintiff ha[d] a unique situation with relation to damage issues." *Id.* "This is not a business or other financial claim where a mechanical application of economic or accounting theories will result in an appropriate damage figure." *Id.* Despite the foregoing, consistent with the Second Circuit's directive in *Visa/Check*, the *Maneely* court found that "it would be im-

proper to let manageability concerns overwhelm the predominance decision[,]" reasoning that "[t]here is a common issue at the core of this case—whether defendants maintained an unconstitutional blanket strip search policy during the class period." *Id.* at 78. The court in *Maneely* identified a second fundamental, common issue—"[w]hether defendants are collaterally estopped from arguing that they maintained a constitutional policy in light of [a prior decision.]" *Id.* Given those common legal issues the *Maneely* court found, as in *Visa/Check*, " 'a constellation of common issues bind[ing] the class members together.' " *Id.* (quoting *Visa/Check*, 280 F.3d at 138).

The court's reasoning in *Maneely* is equally applicable to the present case. Even though ultimately individualized proof of damages may be necessary here, plaintiffs have shown the existence of several common liability issues, previously identified, such as of whether defendants were "obligated to intercede in the gambling and violence that took place on the St. Regis Reservation[;]" whether the Defendants' refusal to provide police protection to the class members [was] based on considerations of race and national origin[;] and "[i]f the refusal was based on [such] considerations ..., were the class members deprived of equal protection[.]" *See* Pl. Memo. at 10. These issues can be decided on a class-wide basis, thus making certification under Rule 23(b)(3) appropriate.

The defendants attempt to distinguish *Visa/Check* from the present case because the former involved alleged antitrust violations where the predominance test is easily met. *See Amchem*, 521 U.S. at 625, 117 S.Ct. at 2250 (citations omitted) ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.") Taking a very narrow view of the applicability of Rule 23(b)(3), during oral argument the defendants went so far as to contend that that Rule only comes into play if an action is a "negative value suit," *i.e.*, a collection of "paltry" cases, with no potential for a significant recovery on an individual basis. Class certification is proper in such cases, defendants maintain, because with potentially greater

damages available if relief is sought on a class-wide basis, attorneys would have an incentive to pursue claims which they otherwise might not. Rule 23(b)(3) does not contain any language limiting its applicability to such "negative value" lawsuits, however; and the court declines to read such a requirement into that Rule.

Furthermore *Amchem* does not, as defendants suggest, mandate a contrary result here as it is distinguishable in several significant ways. To be sure, the parties in *Amchem* were invoking Rule 23(b)(3), among others; but the context was very different from the present case. The Supreme Court in *Amchem* "granted review to decide the role settlement may play, under existing Rule 23, in determining the propriety of class certification[,]" *id.* at 619, 117 S.Ct. at 2247, where the district court had certified a class "to achieve global settlement of current and future asbestos-related claims." *Id.* at 597, 117 S.Ct. at 2237. In sharp contrast to the present case, where the court will have an "opportunity ... to adjust the class, informed by the proceedings as they unfold[,]" no such opportunity existed in *Amchem* because the proposed class was strictly for settlement purposes. *See id.* at 620, 117 S.Ct. at 2248 (citing Fed.R.Civ.P. 23(c), (d)) (footnote omitted). In fact, in *Amchem*, "[t]he class action ... instituted was not intended to be litigated[,]" *id.* at 601, 117 S.Ct. at 2239, whereas to this point every aspect of the present case has been vigorously litigated; and the court has no reason to believe that will change with class certification.

Sheer numbers also distinguish *Amchem* from the present case. There, the Supreme Court candidly stated that "[n]o settlement class called to [its] attention [was] as sprawling[,]" encompassing "potentially hundreds of thousands, perhaps millions, of individuals tied together by this commonality: Each was, or some day may be, adversely affected by past exposure to asbestos products manufactured by one or more of 20 companies." *Id.* at 624 and 597, 117 S.Ct. at 2250 and 2237. Here, if the court is inclined to certify a class of approximately 4,000, which plaintiffs are seeking, that number pales in comparison to the potential class members in *Amchem*. Obviously, a class as vast as that proposed in *Amchem* raises far different concerns, especially in the settlement arena, than does a much smaller class certified for liability purposes only.

In short, try as they may, defendants are unable to convince this court that the present action, raising a constitutional challenge to defendants' alleged failure to provide adequate police protection, is akin to a mass tort such as *Amchem* where class treatment is "'ordinarily not appropriate.'" *Id.* at 625, 117 S.Ct. at 2250 (quoting Adv. Comm. Notes, 28 U.S.C.App., p. 697).

Likewise, defendants have not persuaded the court that individual damage claims predominate over the common legal issues which, at least at this juncture, are the only issues which will be litigated on a class-wide basis. In light of the common legal issues previously identified, and the court's intention to certify a plaintiff class for liability purposes only, the court is convinced that such class, as defined earlier, is "sufficiently cohesive to warrant adjudication by representation[,]" and hence meets Rule 23(b)(3)'s predominance standard. *See Visa/Check*, 280 F.3d at 136 (internal quotation marks and citation omitted).

### 2. Superiority

Having found that plaintiffs have met the predominance aspect of Rule 23(b)(3), the court must next examine whether they have also shown that a class action is the superior means of litigating their claims herein. "Factors relevant to the superiority of a class action under Rule 23(b)(3) include:

'(A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.'"

*Visa Check*, 280 F.3d at 133 (quoting Fed. R. Civ. 23(b)(3)). However, "[t]hese factors are

nonexhaustive." *AMF Bowling Securities Litigation*, 2002 WL 461513, at *8 (internal quotation marks and citations omitted).

Plaintiffs argue that "a class action is clearly a superior method for pursuing this litigation[,]" for several reasons. Pl. Memo. at 14. First of all, according to plaintiffs, "[n]o member of the class has claims of damage that are disproportionate to other members such as would encourage an individual to seek control of the litigation." *Id.* In fact, as plaintiffs are quick to note, since the commencement of this action, roughly ten years ago, "no [potential] class member has expressed any interest in pursuing individual litigation." *Id.* Consequently, plaintiffs reason, that "[t]his lack of individual litigation also favors certification because it reduces the chance that multiple lawsuits will dilute the judicial economy of a class action." *Id.*

Defendants counter that "[t]he thousands of mini-trials that would ... surely follow [class certification] in the instant case ... raise potential Seventh Amendment problems, further decreasing the superiority of a class action." Def. Memo. at 13. This argument is substantially weakened, however, by the Second Circuit's reasoning in *Visa Check* and the district court's reasoning in *Maneely*. The Second Circuit in *Visa Check* found no abuse of discretion where the district court certified a class under Rule 23(b)(3) because that "court recognized that although it appeared at this preliminary stage that damages could be determined with the aid of a class-wide formula, it had the flexibility to address any individualized damages issues, ..., that might arise." *Visa/Check*, 280 F.3d at 141 (citation omitted). More specifically, as the Second Circuit pointed out, the district court "specifically recognized its ability to modify its class certification order, sever liability and damages, or even decertify the class if such an action ultimately became necessary." *Id.* (citation omitted). Similarly, in *Maneely*, as Rule 23(c)(4)(A) provides,[5] the district court found partial class certification appropriate, especially given the Second Circuit's urging to "district courts to take advantage of partial certification in order to 'reduce the range of disputed issues in complex litigation and achieve judicial efficiencies.'" *Maneely*, 208 F.R.D. at 78 (quoting *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 167–68 (2d Cir.2001)) (other citation omitted). Finally, the court finds that a class action is a superior method of resolving the liability issues herein because litigation by each individual plaintiff "would risk disparate results among those seeking redress, ... [and] would exponentially increase the costs of litigation for all, and would be a particularly inefficient use of judicial resources." *See AMF Bowling Securities Litigation*, 2002 WL 461513, at * 8 (internal quotation marks and citation omitted).

As should be readily apparent by now, the court will grant the plaintiffs' motion for certification because they have established all of the elements necessary for such certification under Rule 24(a), as well as qualifying for certification under Rule 23(b)(3). Partial certification is appropriate given the common legal issues. *See Maneely*, 208 F.R.D. at 78. Thus, the court hereby certifies a class as to the issues identified earlier. *See infra* at p. 39. "[J]udicial efficiency will be served by deciding th[ose] issue[s] on a class-wide basis, once and for all." *See Maneely*, 208 F.R.D. at 79.

As set forth earlier, that class shall consist of:

> All members of the Akwesasne community residing on the United States portion of the ancient Mohawk Indian reservation known as Akwesasne or St. Regis, during June, 1989 through May, 1990, other than those persons named as defendants in an action entitled *Joseph H. Pyke, et al. v. Anthony ("Tony") Laughing, et al.*, No. 92–CV–555, filed in the United States District Court for the Northern District of New York, constituting a class of individuals who claim injuries as a result of the alleged unlawful acts of the defendants in the present action.

Depending upon how this litigation progresses, the court may consider a decertification of the class following liability determina-

---

**5.** That Rule provides that "[w]hen appropriate ... an action may be brought or maintained as a class action with respect to particular issues[.]" Fed.R.Civ.P. 23(c)(4)(A).

tions, or perhaps alter the certification in some other way to deal with the issue of damages. *See* Fed.R.Civ.P. 23(c)(1) (an order deeming a class action maintainable "may be altered or amended before the decision on the merits[ ]"); *see also In re State Police Litigation,* No. 5:89CV606, 1998 WL 91064, at *5 (D.Conn. Jan. 27, 1998) (citation omitted) ("If it becomes obvious during trial that too many individual issues exist for one adjudication . . ., the court can amend or rescind certification.").

Accordingly, it is hereby

ORDERED, that:

(1) this action is certified as a class action pursuant to Fed.R.Civ.P. 23(b)(3), with Joseph H. Pyke, individually and as personal representative of the Estate of Matthew Pyke, May P. Cole, Charles Benedict, Patricia A. Benedict, Julius M. Cook, Beverly J. Pyke, Edward Smoke, Selena M. Smoke, and Margaret Pyke Thompson, all represented by the Boies, Schiller & Flexner LLP, as representative of the plaintiff class;

(2) this action shall proceed immediately as a class action pursuant to the terms of this Order, pending any modification of the terms of the Order pursuant to any objection or request to appear or intervene by any member of the plaintiff class; and

(3) subject to further orders of this court the class of plaintiffs is certified solely for the purpose of determining the issues of liability, as more fully described in the complaint; and

(4) within twenty (20) days of the date hereof, plaintiffs' counsel shall submit to the court a proposed notice to prospective members of the plaintiff class, along with proposed methods of circulating such notice, including the identity of any newspaper or newspapers of general circulation in the area effected in this litigation.

IT IS SO ORDERED.